Virgil V. LAMPE, Appellant,

v.

UNITED STATES of America, Appellee.

No. 12551.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 31, 1955.

Decided Jan. 19, 1956.

Mr. Sidney S. Sachs, Washington, D. C. (appointed by the District Court), with whom Mr. Martin J. McNamara, Jr., Washington, D. C., (also appointed by the District Court) was on the brief, for appellant.

Mr. Fred L. McIntyre, Asst. U. S. Atty., with whom Messrs. Leo A. Rover, U. S. Atty., and Lewis Carroll and Edward O. Fennell, Asst. U. S. Attys., were on the brief, for appellee.

Before EDGERTON, Chief Judge, and WILBUR K. MILLER and FAHY, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Virgil V. Lampe and Woodrow W. O'Bryan were jointly indicted for second degree murder and were tried together. O'Bryan was acquitted by the jury but Lampe was convicted of the crime charged and brings this appeal. He requests reversal principally because of his theory that the trial judge erroneously received in evidence three statements made to the police by the victim of the homicide.

The crime was committed July 16, 1954, in Barnard Hill Park in the District of Columbia near the Maryland line. The appellant, his acquitted co-defendant and Fred Lamar, the murdered man, had been in the park for a week or more engaged in a prolonged drinking spree, which was interrupted now and then by "panhandling" expeditions to get money for more wine. Finally, after days of debauchery, Lampe and O'Bryan concluded Lamar was a police informer and made a vicious attack upon him, beating him into insensibility.

Shortly after he regained consciousness, Lamar managed to leave the park and was standing near Eastern and Rhode Island Avenues at about 4:10 a. m. July 17, when he was seen by two police officers who were cruising in the area and who alighted to investigate. They said Lamar had been badly beaten, was breathing with difficulty, and appeared to be in a dazed condition. His speech was partly incoherent but understandable. When asked what had happened, Lamar said, "Get me to a hospital * * I have been beaten up by two men. * * Lampe and O'Bryan." This was the first of the three statements which Lampe urges were erroneously received in evidence.

The officers immediately went with Lamar to the nearby park, which he said was the scene of the attack, and there found Lampe and O'Bryan in a drunken sleep. They took the three men to a precinct station where, about forty minutes after they had first encountered him, Lamar made a second statement, which the appellant says was erroneously received in evidence. The officer's narration of it at the trial included the following: "[H]e [Lamar] thought O'Bryan had hit him maybe once or twice, he wasn't sure, but he was very sure that they both had taken part in the beating, beating him up."

A third statement, the admission of which is complained of, was made by the victim to an officer in the hospital about 10:30 a. m. July 17. It is as follows:

"He [Lamar] said that O'Bryan was a friend of his, that they had been drinking together, and I questioned him about this beating he had, and he stated O'Bryan wasn't responsible for the beating, that O'Bryan had only hit him once, and that was all, that he and O'Bryan were good friends."

Lamar died of his injuries shortly before midnight July 18 and on the morning of the following day, July 19, O'Bryan and Lampe signed written confessions which were received in evidence. O'Bryan's statement sought to minimize his own participation in the assault and his attempted exculpation of himself was corroborated to some extent by Lampe's confession, from which we quote:

"For the past two weeks Lamar, O'Bryan and I have been laying up in Barnard Hill Park, drinking.

"Around about 7:15 a. m., July 16, 1954, while I was on Rhode Island Avenue in Maryland I met O'Bryan. He told me that he was gonna get a pint of wine and that Fred [Lamar] was laying up in the woods. I gave O'Bryan a quarter and said let's get a fifth. We went and got a fifth of wine and then went up in Barnard Park, where Fred was and we all drank it.

"Then O'Bryan and me left and went panhandling up the street—way up to Woodridge on Rhode Island Avenue and we got over two dollars. Then we went and bought a half gallon of wine and went back to the park where Fred was. We layed around and drank up most of the half of gallon of wine.

"It was getting towards evening and I told Fred that he ought to spring for a half gallon of wine. That's when we got in a little argument, I guess, about Fred drinking more than his share. Then Fred gave me two dollars and I gave it to O'Bryan and O'Bryan went and got another half gallon of wine. I stayed up there with Fred. We was laying on the ground. O'Bryan came back with a half gallon of wine and we drank almost all of that half gallon. Then trouble started between Fred and me. We started arguing again about the wine. Then I accused Fred of being a police pimp because everything happened around there the Mt. Rainier police was right behind us and I figured that Fred was telling them.

"All three of us was sitting on the ground together. I was sitting next to Fred, he was on my right and Fred hauled off and hit me in the

left side of my chest with his fist. I grabbed him around the neck with my bad arm and then I hit him three or four times with my other hand. Then O'Bryan got into it and said that he would get in a couple of licks too. * * * "

Lampe's counsel objected to the admission of the confession "on the ground that the man was incompetent to dictate it." Thereupon the court heard evidence on that subject in the absence of the jury, after which the jury was recalled and heard six witnesses as to Lampe's condition when he confessed. The trial judge carefully charged the jury to decide for itself whether the confession was voluntary, not only as to Lampe's competency to make it, but also in all respects. The appellant did not argue here that his confession was erroneously received.

Uncontradicted evidence developed at the trial, including Lampe's admissions and his testimony from the stand,[1] showed beyond doubt that Lamar had been fatally beaten by Lampe with some slight assistance from O'Bryan.

The questions to be considered are (a) whether Lamar's statements to the police were erroneously received in evidence, and (b) if so, whether Lampe was so prejudiced thereby that his conviction of second degree murder should be reversed.

■ Before admitting in evidence the officers' testimony, the trial court conducted an inquiry out of the presence of the jury to determine whether or not the statements were spontaneous declarations and therefore admissible under an exception to the rule excluding hearsay. With respect to the first statement, made at 4:10 a. m., we hold the court did not abuse its discretion in permitting evidence concerning it to go to the jury. The court's inquiry disclosed that Lamar was desperately injured when he made the statement. He bore severe and

numerous external and internal wounds, principally in and about the chest and lungs. There was also before the court the following testimony that had been given before the Coroner [2] by the officer who was with the witness and who first talked with Lamar as already set forth:

"I [the officer] said, 'What happened here, boy? Who beat you up?' He said, 'Lampe and O'Brien [O'Bryan].' * * * I said, 'Where are they now?' He said, 'I just left them.' He said, 'They are underneath the tree on Barnard Hill Park asleep.' I said, 'How do you know they are asleep?' He said, 'Well, I awoke—I was unconscious from the time they beat me until about a half hour ago.' He said, 'I walked—crawled out from under the trees and walked down to Mt. Rainier.' So, we went back with Lamar [the victim] and he pointed out the tree where O'Brien and Lampe were. When we arrived there they were both sound asleep."

The place referred to was several blocks away; but it seems clear the officer to whom this statement was made was the first person with whom Lamar spoke after becoming conscious and moving away from the scene of the attack in a fatally wounded, dazed and excessively shocked condition.

Guthrie v. United States, 1953, 92 U.S. App.D.C. 361, 207 F.2d 19, contains a recent review of the principles applicable to the admission in evidence of a spontaneous declaration. Under those principles the facts of the present case bring Lamar's statement to the officer, "Get me to a hospital * * * I have been beaten up by two men. * * * Lampe and O'Bryan," within the discretionary power of the trial judge to admit.

■ In regard to Lamar's second statement, made at the precinct station about 4:50 a. m. July 17, we should be inclined to hold that it also was properly

---

1. Lampe did not expressly repudiate his confession but said he remembered nothing about the evening in question except that he was drinking with O'Bryan and Lamar in the park. He did not deny making the murderous attack.

2. The court was requested to and said he would read this testimony.

received as a spontaneous declaration were it necessary to pass upon its admissibility. There had been no opportunity for reflection. Lamar had had no medical attention and must have been suffering from his grievous wounds even more than when he first talked to the police. But, even if the second statement was not spontaneous, admission of testimony concerning it was not prejudicial error since it added nothing to the admissible earlier statement. To be sure, Lamar said in the second statement he thought O'Bryan had only hit him once or twice. But he was "very sure" both men had participated in the beating, just as he had told the officers forty minutes earlier. If O'Bryan struck the victim only once, he nevertheless took part in the attack. So, the second statement in no wise contradicted the first and added nothing of substance to it.

We turn to Lamar's third statement, made at the hospital about 10:30 a. m. July 17, which we have quoted above. This evidence was hearsay. Furthermore, the content of the remarks thus attributed to the victim, as well as the circumstances of their utterance, show that the remarks were not due to physical shock or nervous excitement that had stilled the reflective faculties and removed their control, "so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock" and therefore deemed so trustworthy as to be admissible even though brought into the trial by hearsay evidence. Beausoliel v. United States, 1939, 71 App.D.C. 111, 113, 107 F.2d 292, 294, cited approvingly in Guthrie, supra. Lamar had been in the hands of public authorities for about six hours, during the latter part of which he was in a hospital under medical care. We cannot say this later statement was uninfluenced by reflection.

The question is, then, whether the admission of this third and undoubtedly inadmissible statement was prejudicial to Lampe. He insists he was greatly prejudiced by it because in it Lamar placed the weight of the crime upon him and said O'Bryan was not responsible for it. If O'Bryan struck only one blow, or two as Lampe himself and Lamar's second statement said, he was to that extent responsible for the beating. In saying O'Bryan was not responsible for the attack, Lamar must have meant he did not initiate it. Hence we conclude the inadmissible third statement added nothing of significance to the second or to the first, and indeed added nothing at all to them except the idea that O'Bryan did not begin the beating.

■ Lamar's final statement may have played some part in the jury's acquittal of O'Bryan; for it confirmed his own testimony that he took little part in the fatal beating, and also confirmed Lampe's statement that, "Then [after he, Lampe, had begun the attack] O'Bryan got into it and said that he would get in a couple of licks too." Had it not been received, there would still have been before the jury Lamar's first declaration which may be said to have charged the two men with equal participation in the crime. In that event, O'Bryan's guilt might have seemed greater, but Lampe's would have been no less.

Apart from that, however, the fact that Lampe was not prejudiced by Lamar's last statement is conclusively established by Lampe's confession, which confirmed what Lamar said. He admitted he began the attack and was the principal actor in the crime, and said O'Bryan's role was relatively minor. The appellant can hardly say he was prejudiced by the admission of a bit of testimony which merely tended to confirm what he himself freely admitted. In view of this, and of other competent evidence which amply showed Lampe's guilt of second degree murder, we cannot suppose the jury might have found him guilty of some lesser offense, or might have acquitted him, if the technically inadmissible third statement had been excluded.

Appellant's other reasons for reversal do not impress us as requiring discussion.

Affirmed