William A. BABER, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17348.

United States Court of Appeals
District of Columbia Circuit.

Argued March 12, 1963.

Decided June 27, 1963.

Mr. Newell A. Clapp, Washington,
D. C. (appointed by this court), with

whom Mr. Robert M. Lichtman, Washington, D. C., was on the brief, for appellant.

Mr. Robert D. Devlin, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Charles T. Duncan, Principal Asst. U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before FAHY, WASHINGTON and DANAHER, Circuit Judges.

WASHINGTON, Circuit Judge.

This is an appeal from a conviction of housebreaking (D.C.Code, § 22–1801 (1961)), and assault with intent to rape (D.C.Code, § 22–501 (1961)). It is contended that the evidence taken as a whole was insufficient to permit conviction on either count, and that certain important evidence was erroneously admitted.

The complaining witness testified as follows: She went to bed about 2:30 or 3:00 on the morning of September 10, 1961. Since it was warm, she left the wooden doors at the front and back of her house open, but latched the screen doors. She slept in a bedroom on the ground floor of the house in a bed with her four-year old child. Her father, who was 96 years old, occupied a bedroom on the second floor. She was awakened by something "feeling over" her. She thought it was her child, but then she felt her skirt being torn.[1] She saw that a man was leaning over her, and was "scared." She struck him, knocking him down, and then jumped up and turned on the light. She recognized the intruder as the appellant. He had his pants open and his privates exposed. She asked him what he was doing in her house, and he ran out through the back door. She looked at the clock, observing that the time was 4:05. Her father was then coming down the stairs. Her child slept through the entire incident.

The witness was asked whether she had told her father "exactly what had happened." At this point defense counsel raised an objection against "any statement made out of the presence of the defendant." The court, having ascertained that the statement had been made "immediately" after the intruder ran out, allowed the witness to state that she had told her father that a boy "had broken into the house and was getting on me," and had left. After she had told her father what had happened she immediately called the police. Other testimony by this witness indicated that she knew the defendant slightly, as he lived in the same block, and that she had had two verbal encounters with him on the two days preceding the incident.

The father, called as the next witness, testified that he was awakened by the noise of a door rattling or slamming. Shortly thereafter he heard his daughter; she "hollered, fussing." He went downstairs and asked his daughter what was wrong. When the witness started to recount his daughter's response an objection was made and overruled. The witness then gave as much of his daughter's statement as he could recollect, which included the identity of the defendant,[2] that the latter had broken in the house "and tried to commit a crime upon" her, and had then run out the back door and slammed it.

Two police officers followed the father to the stand. They had arrived at the scene about 25 minutes after the incident. Over objection, they were allowed to testify in considerable detail concerning the statement that the complaining witness made to them. Her statement to them, as they reported it, corresponded very closely with the account of the incident given by her on the stand. This testimony and that of the father were referred to by the prosecuting attorney, in his closing remarks to the jury, to

---

1. She had gone to bed with her skirt on. Apparently the intruder attempted to unzip the skirt, but in so doing broke the zipper and tore the cloth.

2. While the father could not remember the name, he indicated quite clearly through his testimony that it was this defendant whom the daughter had accused.

show that the statements of the complaining witness had been "perfectly consistent throughout."

## I.

We first consider appellant's contention that he was entitled to a directed verdict of acquittal on both counts. As to the alleged assault with intent to rape (Count 2), he says there was no evidence of intent to achieve carnal knowledge by force and against the will of the complainant. A motion seeking a directed verdict on this ground was made at the close of all the evidence, and was denied. We think it should have been granted.

In Hammond v. United States, 75 U.S.App.D.C. 397, 398, 127 F.2d 752, 753 (1942), we said:

"In order to make out a case of assault with intent to commit rape, it is essential that the evidence should show beyond a reasonable doubt (1) an assault, (2) an intent to have carnal knowledge of the female, and (3) a purpose to carry into effect this intent with force and against the consent of the female."

Here, there was clearly an assault: the intruder, according to the complaining witness, tore her skirt. There was also an evident intent to have carnal knowledge. But evidence of "purpose to carry into effect this intent with force and against the consent of the female" was lacking. The intruder made no threats, and in fact said nothing at all. Apart from tearing her skirt, he did not use physical force or violence. When the complaining witness pushed him off and knocked him to the floor, he jumped up and fled. His conduct was such that he might properly have been convicted of some lesser included offense, but we do not think he was properly found guilty of assault with intent to rape.

As to Count 1, which alleged housebreaking "with intent to commit an assault," we think the trial judge did not err when he submitted the case to the jury.[3] As we have seen, the intruder did commit an assault—he tore the skirt of the complaining witness. Whether his other acts, such as leaning over the complaining witness' body, also constituted an assault is a matter we need not canvass here. The unlawful entry into the house was amply established. The story of the complaining witness was corroborated by the father's testimony as to the slamming of the door, and by the testimony of one of the police officers as to his own observation of the condition of the screen door through which the defendant allegedly entered.

## II.

Appellant also contends that the trial court erred in admitting the testimony of the father and the police officers as to the statements made to them by the complaining witness after the incident. The testimony of the complaining witness was of course essential to the prosecution's case. The defendant-appellant and two other witnesses testified that the defendant was present at a party at the time of the incident testified to by the complaining witness. Her credibility was thus directly involved. In view of our reversal of the conviction under Count 2, the question of the admissibility of the testimony of the father and the police officers is narrowed to the effect of that testimony on the verdict and judgment rendered on Count 1 (housebreaking).

Appellant's chief reliance is on the rule against hearsay. The Government contends that the statements were properly admitted because they come within the "spontaneous declaration" exception to that rule. Whether or not the circumstances surrounding the utterance of a statement are such as to render hearsay testimony relating its content admissible within the spontaneous declarations exception is a question that is ordinarily very difficult for an appellate court—having only the written record before it—to answer. While extreme instances

---

3. No motion was made for a directed verdict of acquittal on this count.

have occasionally prompted us to declare such statements inadmissible, Smith v. United States, 94 U.S.App.D.C. 320, 215 F.2d 682 (1954); Brown v. United States, 80 U.S.App.D.C. 270, 152 F.2d 138 (1945); we normally adhere to the principle enunciated in Beausoliel v. United States, 71 App.D.C. 111, 114, 107 F.2d 292, 295 (1939), that the matter is one for "the exercise of sound judicial discretion, which should not be disturbed on appeal unless clearly erroneous." See Lampe v. United States, 97 U.S.App.D.C. 160, 229 F.2d 43 (1956), cert. denied, 359 U.S. 929, 79 S.Ct. 612, 3 L.Ed.2d 631 (1959); Guthrie v. United States, 92 U.S.App.D.C. 361, 207 F.2d 19 (1953). Cf. Wheeler v. United States, 93 U.S. App.D.C. 159, 211 F.2d 19 (1953), cert. denied, 347 U.S. 1019, 74 S.Ct. 876, 98 L.Ed. 1140 (1954).

In each case of this sort, the trial judge must determine whether the utterance in question meets the test applied in Beausoliel v. United States, supra 71 App.D.C. at 113–114, 107 F.2d at 294–295:

"Declarations, exclamations and remarks made by the victim of a crime after the time of its occurrence are sometimes admissible upon the theory that 'under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy * * *.' What constitutes a spontaneous utterance such as will bring it within this exception to the hearsay rule must depend, necessarily, upon the facts peculiar to each case, and be determined by the ex-

ercise of sound judicial discretion, which should not be disturbed on appeal unless clearly erroneous."

 It is quite clear that the statement to the father was properly admitted, in light of the extremely brief lapse of time between the exciting event and the utterance. The statement to the police is, however, more doubtful. The time interval, one of the relevant factors, was 25 minutes. While both the Guthrie and Lampe cases involved considerably longer intervals, in each of those cases the declarant had been fatally injured and was in great pain at the time the statement was made. Our declarant was in no such straits. The testimony as to her mental and emotional condition during the period from the time of the incident until the arrival of the police is scanty. She testified that she was "scared" when she awoke. One police officer testified that she was "nervous," "upset," and "mad," but "not hysterical." The other policeman did not testify as to her condition. Thus, we have a situation which is near the borderline and in which there appears to be some question, on the basis of the reading of the record alone, that the statement to the police was a spontaneous declaration. However, in view of what we say below, we need not make a definitive decision on the point.

 Even on the assumption that the testimony should not have been admitted as a spontaneous declaration, we do not believe that reversible error occurred in this connection. The hearsay rule is primarily designed to exclude testimony of extra-judicial declarations when those declarations are introduced for the purpose of proving the truth of their content. In this case, however, the testimony of the police officers was merely cumulative for that purpose, since the story had already been fully related to the jury by the complaining witness and by the father in his account of her spontaneous declaration immediately after the culprit had fled. The complaining witness was of course seen and heard by the jury and was cross-examined as to her story. We are convinced that no error

affecting substantial rights occurred as a result of the admission of the policemen's testimony.[4] Appellant's reliance on the widely accepted rule against the admission of prior consistent statements of unimpeached witnesses [5] does not persuade us to the contrary. Nothing in the authorities cited to us seems to provide an adequate explanation as to why the admission of such declarations in evidence should have required a new trial in the Sherman and Mellon cases, supra note 5, or in similar cases generally, especially since in those cases the witness whose credibility was involved testified and was subject to cross-examination. In the present case, where in addition the other evidence on the housebreaking count was strong and ample, we believe that the introduction of the policemen's cumulative testimony for credibility purposes did not create any significant risk of an unjust or irrational verdict.

### III.

For these reasons, the judgment of conviction on Count 1 will be affirmed, and that on Count 2 will be set aside, with directions to enter a judgment of acquittal on that count.

 The sentence which appellant received was a general one, covering both counts, and directing appellant's imprisonment for a period of from three years to nine years. The Government, relying on Hirabayashi v. United States, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943), urges that if (as we now hold) one count is to be sustained, the general sentence of imprisonment as pronounced must stand. We think, however, that we possess a considerable measure of discretion in the matter.[6] Under the circumstances of this case, we are left in uncertainty that the trial judge would have

imposed the sentence he did if appellant had been convicted solely of housebreaking, and accordingly we consider that in the interest of substantial justice we should vacate the general sentence as to both counts, and remand for resentencing on Count 1.

So ordered.

---

4. See Harris v. United States, 50 App.D.C. 139, 269 F. 481 (1920); also Harrod v. United States, 58 App.D.C. 254, 29 F.2d 454 (1928).

5. See, e. g., IV Wigmore, Evidence § 1124 (3d ed. 1940); United States v. Sherman, 171 F.2d 619 (2d Cir. 1948); Mellon v. United States, 170 F.2d 583 (5th Cir. 1948); but cf. Beaty v. United

States, 203 F.2d 652 (4th Cir. 1953); Harrod v. United States, 58 App.D.C. 254, 29 F.2d 454 (1928).

6. See Ballew v. United States, 160 U.S. 187, 203, 16 S.Ct. 263, 40 L.Ed. 388 (1895); United States v. Hines, 256 F.2d 561 (2d Cir. 1958); Note, 107 U. Pa.L.Rev. 726 (1959).