Roy A. SMITH, Jr., Appellant,

v.

UNITED STATES of America,
Appellee.

Cornelius ANDERSON, Jr., Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 17838, 17839.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 8, 1963.

Decided April 16, 1964.

Wilbur K. Miller, Circuit Judge, dissented.

Count one charged unauthorized use of an automobile belonging to James Dolinger on or about October 3, 1962; count two charged unauthorized use of an automobile belonging to Joanna Wallace on or about October 4, 1962; and count three charged interstate transportation of the Wallace car.

Appellants claim the conviction on count one must be reversed because it was based on evidence obtained in a search without a warrant, in violation of the fourth amendment. They further claim admission of this evidence was prejudicial on counts two and three, and requires reversal of those counts as well.[1]

The Government argues that (since the sentences on all counts are concurrent) under Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943), we may affirm the entire judgment, despite error on count one, if there is sufficient properly admitted evidence to sustain the jury's verdict on count two or count three. But we think *Hirabayashi* allows affirmance only if the jury's consideration of counts two and three was not prejudiced by error on count one. This appears from the rule as stated by the Supreme Court in United States v. Trenton Potteries Co., 273 U.S. 392, 402, 47 S.Ct. 377, 381, 71 L.Ed. 700 (1927):

> "The combined sentence on both counts does not exceed that which could have been imposed on one alone. There is nothing in the record to suggest that the verdict of guilty on the first count was in any way induced by the introduction of evidence upon the second. In these circumstances the judgment must be sustained if either one of the two counts is sufficient to support it."

See United States v. Guido, 200 F.2d 105 (2d Cir. 1952); United States v. Gordon, 196 F.2d 886 (7th Cir. 1952), *reversed on other grounds*, 344 U.S. 414, 73 S.Ct.

Mr. Alexander Boskoff, Washington, D. C. (appointed by this court) for appellants.

Mr. Alan Kay, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker and Harold Titus, Asst. U. S. Attys., were on the brief, for appellee. Mr. William H. Willcox, Asst. U. S. Atty., also entered an appearance for appellee in No. 17838.

Before BAZELON, Chief Judge, and WILBUR K. MILLER and WASHINGTON, Circuit Judges.

BAZELON, Chief Judge.

Appellants Smith and Anderson were jointly charged, tried, and convicted on all three counts of an indictment, and received concurrent sentences on all counts.

1. We reject at the outset the appellants' contention that the inference of guilt from possession of recently stolen property is not permissible. Bray v. United States, 113 U.S.App.D.C. 136, 306 F.2d 743 (1962).

369, 97 L.Ed. 447 (1953); Samuel v. United States, 169 F.2d 787 (9th Cir. 1948); Farris v. United States, 24 F.2d 639 (9th Cir. 1928).[2] *Hirabayashi* is not to the contrary since there was no claim in that case that error on either count prejudiced the other.[3]

Thus we must consider whether there was error on count one and, if so, whether it prejudiced counts two and three.

*The Wallace counts* (two and three). Joanna Wallace testified that her maroon 1962 Chevrolet disappeared from its parking space in front of her house in the District of Columbia some time after 8:30 p. m., October 4, 1962. James Bailey testified that on the same evening he and Elmer Williams,[4] attracted by a hammering sound near their homes on Sligo Mill Road, Prince Georges County, Maryland, investigated and saw a maroon 1962 Chevrolet parked with its hood lifted in a wooded area at the dead end of the road. The dome light inside the car was lit and there was a light on underneath the hood. Standing twenty-five feet from the car, he saw two men whom he identified as appellants, one "under the hood," and the other inside the car. They fled when Williams shouted "Halt, police." Bailey and Williams pursued but were unable to catch the two men.

Officer Brown of the Prince Georges Police testified that he responded to a call and observed the 1962 Chevrolet and a 1955 Buick parked about fifty yards away. About fifteen minutes after his arrival, Brown saw the appellants approaching the Buick carrying a gasoline can; Bailey and Williams told him these men were "the ones they had chased from the '62 Chevrolet." When Brown questioned the appellants, they denied any knowledge of the Chevrolet, stated they had run out of gasoline in the Buick, and proceeded to pour the gasoline they were carrying into the Buick. Brown then arrested the appellants.

The 1962 Chevrolet was later identified as the car stolen from Joanna Wallace; the 1955 Buick belonged to appellant Anderson. At the time of the arrests, both cars were impounded and taken to Knoll's Esso Service Station in Hyattsville, where the series of events relating to the Dolinger count began.

*The Dolinger count* (one). James Dolinger testified that his 1962 Chevrolet disappeared from its parking space on October 3, 1962. When the police returned it to him three days later, several parts were missing: the tachometer, the carburetor, a spare tire, and the trans-

---

2. Although many cases since Claasen v. United States, 142 U.S. 140, 12 S.Ct. 169, 35 L.Ed. 966 (1891), have applied this rule, we are aware of no case which invoked the rule to defeat a claim of prejudice resulting from the seriously erroneous admission of evidence. Most often the error alleged is insufficiency of the evidence, Lawn v. United States, 355 U.S. 339, 359, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958), or invalidity of the law, Whitfield v. Ohio, 297 U.S. 431, 56 S.Ct. 532, 80 L.Ed. 778 (1936). In neither type of case would prejudice from the invalid count be likely.

Where there is error on one count, courts have remanded for resentencing despite the presence of another valid count. Ballew v. United States, 160 U.S. 187, 16 S.Ct. 263, 40 L.Ed. 388 (1895); Baber v. United States, 116 U.S.App.D.C. 358, 324 F.2d 390 (1963); United States v. Hines, 256 F.2d 561 (2d Cir. 1958); Nelms v. United States, 94 U.S.App.D.C. 267, 215 F.2d 678 (1954); Robinson v.

United States, 30 F.2d 25 (6th Cir. 1929). These cases reject the presumption of the common law courts that the judge imposed sentence solely on the good count, Claasen v. United States, *supra* 142 U.S. at 146–147, 12 S.Ct. 169, 35 L. Ed. 966, and recognize that he might have sentenced differently if faced with only the proper counts. We can do no less where it appears the jury might have acted differently.

Finally, even where the rule is applicable, its use is discretionary with the reviewing court. United States v. Hines, *supra*.

3. Nor could there have been any claim of prejudice since the facts were admitted by the defendant, who argued solely that both counts were invalid since the statutes on which they were based were unconstitutional.

4. Williams died before the trial.

mission (shown to have been stamped as No. B192871).

Agent Mulholland of the Federal Bureau of Investigation testified that on October 5, 1962, he and Officer Baxter of the Prince Georges County Police went to Knoll's Esso Service Station where, without a search warrant, they examined the 1962 Chevrolet (the Wallace car) and the 1955 Buick. In the trunk of the 1955 Buick he saw a tire and a Chevrolet transmission bearing No. B192871. Defense counsel objected when Agent Mulholland began telling about the results of the search, on the ground that the search was illegal. The court overruled the objection without holding a hearing. Thereafter, Officer Baxter gave testimony similar to that of Agent Mulholland, adding that under the front seat of the Buick he found a tachometer of the type used only in late model Chevrolets.

Detective Reid of the Metropolitan Police testified that while investigating the thefts he learned that the transmission from Dolinger's car had come into the possession of one Andy Hardy who turned it over to the police on October 23.[5] Hardy testified that he had bought the transmission from the appellants in the early part of October. Richard Donaldson, who had assisted Hardy in negotiating with the appellants, supported Hardy's testimony.[6]

■■ Appellants argue their conviction on count one must be reversed because the search conducted by Officers Baxter and Mulholland violated the fourth amendment and the court erred in admitting the testimony resulting from that search. Even where probable cause exists a warrantless search is forbidden[7] unless made incident to a valid arrest[8] or justified by exceptional circumstances, such as a significant possibility of removal[9] or destruction[10] of the object of the search. Even before the recent case of Preston v. United States, 376 U.S. 364, 84 S.Ct. 881 (1964), it was clear that a warrantless search of a car in police custody at a time after the occupants' arrest and under circumstances where there is no danger of removal is illegal. Rent v. United States, 209 F.2d 893 (5th Cir. 1954); Shurman v. United States, 219 F.2d 282 (5th Cir. 1955); Millette v. State, 167 Miss. 172, 148 So. 788 (1933). The Supreme Court's holding to the same effect in *Preston* puts the matter to rest.

■ Although the trial court in the present case did not hold a separate hear-

---

5. Officers Baxter and Mulholland had not removed the parts they found in Anderson's car during the October 5 search. An investigation to determine the source of the parts was then launched through the Chevrolet factory, and the transmission was ultimately traced to Dolinger's car. Meanwhile, the appellants were released on bond on the charges relating to the Wallace car, and Anderson, upon payment of a $10 fee, removed his car from the pound. A few days later, Detective Reid saw Anderson driving his car with "dead tags" and ordered the car impounded anew. Detective Reid then obtained a warrant to search Anderson's car, but found nothing.

6. Appellants admitted possession of the transmission, but claimed their possession was innocent. Smith testified he bought it on the morning of October 4 from one George Footman (alias Hart), and later that day put it into Anderson's trunk.

Anderson testified that Smith told him a transmission was in his (Anderson's) car which Smith had been using, and that Anderson was to sell the transmission to Hardy and Donaldson. Anderson testified that he did so. Footman was not presented as a witness.

7. Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958); Johnson v. United States, 333 U.S. 10, 14–15, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

8. Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925).

9. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

10. Ker v. California, 374 U.S. 23, 41–42, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). *Cf. id.* 374 U.S. at 40–41, 61–62, 83 S.Ct. 1623, 10 L.Ed.2d 726.

ing on the legality of the search, the record shows that this case falls squarely within the ambit of *Preston* and the other cases cited *supra*.[11] On these facts there is no need to remand to the District Court for further findings. Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921).[12] We hold the search was illegal.[13] Wrightson v. United States, 95 U.S.App.D.C. 390, 222 F.2d 556 (1955).

Accordingly the testimony given by Officers Baxter and Mulholland should have been excluded. But the question arises whether admitting their testimony might be harmless error since Hardy and Donaldson provided other evidence incriminating appellants. See People v. Parham, 33 Cal.Rptr. 497, 384 P.2d 1001 (1963). This question is controlled by Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963).

In *Fahy*, a policeman observed the defendant at 4:40 a. m., driving away from a synagogue with a paint brush and a can of black paint in his possession. Later the same day, having learned that several black swastikas were painted on the synagogue between 4:00 a. m. and 5:00 a. m., the policeman went to the defendant's garage and without a search warrant seized the brush and can of paint. The defendant was later arrested and confessed. The trial court held the can and brush admissible; the Connecticut Supreme Court of Errors held they

were not but affirmed the conviction on the ground the error was harmless in view of the other evidence in the case. The Supreme Court reversed, finding it unnecessary to decide "whether the erroneous admission of evidence obtained by an illegal search and seizure can ever be subject to the normal rules of 'harmless error' " since the admission of the brush and can was prejudicial in several respects.

The Supreme Court held admission of the brush and can was not merely cumulative of the officer's properly admitted testimony that he saw those objects in the defendant's possession, because admitting the objects themselves (1) corroborated the officer's testimony, and (2) provided the basis for opinion testimony that the paint and brush matched the markings on the synagogue, a significant fact obviously not available from the officer's testimony. As to the other incriminating evidence, the confession, the record showed it might have been induced by the police telling Fahy they had the brush and can. Although there was no claim at trial that the confession was inadmissible as fruit of the poisonous tree, the Supreme Court held that the "[defendant] should have had a chance to show that [it was]." Failure to object at trial was excused on the ground that the trial court's initial ruling admitting the brush and can eliminated any basis for attacking the admissibility of evidence which might have been the fruit of illegally seizing those objects.[14]

11. The Government argues that Baxter's and Mulholland's search was not unreasonable since, as they testified, they did not know who owned the Buick. Even assuming a warrantless search of a car by an officer unaware of its ownership is justified, Officer Brown, who ordered the car impounded, knew that it was Anderson's; the police who searched the car must be charged with that knowledge.

12. The Government, in its brief and oral argument, gives no indication of any evidence it would proffer which would tend to establish exceptional circumstances providing legal justification for this warrantless search.

13. Failure to move before trial under Rule 41(e) for the suppression of evidence illegally obtained does not waive the fourth amendment objection where the violation is clear in the record. Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L. Ed. 654 (1921); Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921).

14. Fahy took the stand and admitted painting the swastikas. The Supreme Court cited this as "another indication of the prejudicial effect of the erroneously admitted evidence," since "[i]t was only after admission of the paint and brush and only after their subsequent use to

■ In this case, the improperly admitted testimony of the officers (1) corroborated the testimony of Hardy and Donaldson, and (2) by showing that Anderson's car also contained a spare tire and a Chevrolet tachometer, added a significant fact not disclosed by other testimony. We think this type of prejudice would be enough, under *Fahy*, to require a new trial on count one, if that count stood alone. But it does not stand alone; hence, under *Hirabayashi*, we must consider whether the error under count one prejudiced the jury's deliberations on counts two and three. In making that determination, the full extent of possible error under count one must be examined. That error may not have stopped at the officers' testimony; the only other incriminating evidence on that count, consisting of Hardy's and Donaldson's testimony, may itself be inadmissible as fruit of the poisonous tree.[15] If their testimony was "come at by exploitation of [the primary] illegality," it may not be used. Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963), quoting MAGUIRE, EVIDENCE OF GUILT 221 (1959). And see McLindon v. United States, 117 U.S.App.D.C. ——, 329 F.2d 238 (1964). Again as in *Fahy*, there was no opportunity to explore this matter because the court denied the motion to exclude the officers' testimony. Thus a hearing will be required to determine whether Hardy's and Donaldson's testimony is admissible.[16]

■ We turn now to a consideration of counts two and three. That testimony

on one count may prejudice other counts; is not debatable. Drew v. United States, 118 U.S.App.D.C. ——, 331 F.2d 85 (1964); Hair v. United States, 110 U.S.App.D.C. 153, 289 F.2d 894 (1961); Kidwell v. United States, 38 App.D.C. 566 (1912); Farris v. United States, 24 F.2d 639 (9th Cir. 1928). An example is where different criminal acts are charged and the jury, in considering a given charge, is made aware of evidence that the defendant is guilty of another crime. In the present case, the evidence on count one tended to show another occasion when appellants were guilty of unauthorized use. But, as we have seen, that evidence was clearly tainted in part, and further inquiry may show that it was wholly tainted. In these circumstances, as the court said in Farris v. United States, *supra*, where evidence admitted on one count had been obtained by illegal search and seizure, "testimony admitted in support of one count may be so prejudicial in its effect as to necessitate a complete reversal as to all counts." 24 F.2d at 640.

But the extent, if any, to which the jury was influenced in its consideration of counts two and three would depend on the state of the evidence on those counts. Edwards v. United States, 265 F.2d 302 (9th Cir. 1959). If the evidence on those counts were overwhelming, the error could be considered harmless as to them. Farris v. United States, *supra;* see Commonwealth v. Dyer, 243 Mass. 472, 509-510, 138 N.E.2d 296, 314 (1922). But in this case the evidence on counts two and three was not overwhelming:

corroborate other state's evidence and only after introduction of the confession that the defendants took the stand [and] admitted their acts." 375 U.S. at 91, 84 S.Ct. at 232, 11 L.Ed.2d 171.

15. The record raises a significant possibility that Hardy's and Donaldson's testimony may well have been fruit of the poisonous tree. Smith testified without contradiction that, in response to a question from Detective Reid, he said he had sold the transmission to Hardy. The Government's brief says "the name of the per-

son to whom they sold the transmission [was] given by them to Detective Reid." And Reid testified that his investigation showed the transmission came into the hands of Hardy, thus suggesting that Hardy did not come to the police on his own initiative.

16. Appellants' testimony admitting possession of the transmission does not make the error harmless since, as in *Fahy*, they took the stand only after the prosecution had introduced the illegal evidence. See note 14, *supra*.

it consisted of a nighttime identification made from a distance of twenty-five feet, which was denied by the defendants, who gave a somewhat plausible explanation of their presence in the vicinity: that they were in the area for the purpose of picking up Smith's car, which had been left with a friend for repairs. Having passed the intersection where they should have turned, they made a U-turn, and drove up a hill. When they reached the top, Anderson's car ran out of gas. They walked to a nearby gas station, and were returning with a can of gasoline when they were identified and arrested.[17] Furthermore the inference which the jury was required to draw from the evidence in this case in order to reach a finding of guilt beyond a reasonable doubt tends to show that the effect of the error was not negligible. From Bailey's testimony that appellants were in possession of the Wallace car, the jury was allowed to infer that they had taken the car in the District of Columbia and brought it to Maryland. Bray v. United States, 113 U.S. App.D.C. 136, 306 F.2d 743 (1962). We agree that this was a permissible inference from the evidence in this case, but it was by no means the only one which could fairly have been drawn. *Cf.* Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229 (1947). Thus we cannot be certain that a jury considering

17. Appellants' denials that they stole the Wallace automobile were not left unelaborated. Their affirmative testimony included references to the Wallace counts. We think the following excerpts from the record amply show this.

Anderson testified on direct examination as follows:

"Q. Now, let me direct your attention to on or about October 4, 1962, did you take an automobile that belonged to one Joanna Wallace, who testified here previously?

"A. No, sir.

"Q. Did there come a time when you were arrested out in Prince Georges County?

"A. Yes, sir.

"Q. What were you doing out there?

"A. I was—we was on our way to pick up Smith's car from a friend by the name of Skipper.

"Q. Were you anywhere near the car or were you in the vicinity of the car that belonged to Joanna Wallace?

"A. I wasn't near it.

"Q. You wasn't near it?

"A. No, sir.

"Q. Did there come a time when you were out there, that this particular car that belonged to Joanna Wallace was pointed out to you?

"A. Well, when we came back from the filling station to put gas in my car, they towing a car out of the woods at that time.

"Q. Now had you driven that particular car, the car that was being towed, had you driven it out to Maryland?

"A. No, sir."

Anderson's testimony on cross-examination included the following:

"Q. You were never near that 1962 Chevrolet?

"A. No, sir.

"Q. You just happened to be walking by, getting gas?

"A. I just happened to run out of gas.

"Q. Looking for Skipper?

"A. Going towards Skipper's house.
*   *   *   *   *

"Q. Isn't it a fact that you two attempted to strip that 1962 Chevrolet?

"A. No, sir.

"Q. And that in so stripping, you were startled by Mr. Bailey and the person they kept referring to as deceased?

"A. No, sir."

Smith's direct testimony included the following:

"Q. Now did there come a time when you were arrested in the vicinity of Sligo Mill Road and Sheridan Street?

"A. Yes, there was.

"Q. What were you doing there?

"A. We was on our way to—about to a friend of mine's house, named Skipper Barry."

On cross-examination, Smith further testified:

"Q. *   *   * Did you go to Skipper's house?

"A. No, we didn't go to Skipper's house.

"Q. Where did you go?

"A. We went to the gas station. As we made the turn to turn around, then we ran out of gas right at the top of the hill."

the Wallace counts alone would not have had a reasonable doubt of defendants' guilt. See Gibson v. United States, 80 U.S.App.D.C. 81, 149 F.2d 381 (1945); Farris v. United States, *supra;* Hair v. United States, *supra.*[18]

■■ We do not now decide whether the erroneous admission of the officers' testimony was itself sufficient to create "a reasonable possibility that the evidence complained of [as to count one] might have contributed to the conviction [on counts two and three]." Fahy v. Connecticut, *supra,* 375 U.S. at 86–87, 84 S.Ct. at 230, 11 L.Ed.2d 171. If Hardy's and Donaldson's testimony was inadmissible fruit of the poisonous tree, however, then there was *no* competent evidence on count one, and we would be obliged to hold, as a matter of law, that counts two and three were sufficiently prejudiced to require reversal. We remand to the District Court with directions to hold hearings, make findings of fact, and reach conclusions of law on the source of Hardy's and Donaldson's testimony. If their testimony is found inadmissible, the trial judge should set aside the convictions and judgments, enter a judgment of acquittal on count one and order a new trial on counts two and three. If Hardy's and Donaldson's testimony is found to have been derived from an independent untainted source, we will reinstate this appeal to consider the prejudicial effect on counts two and three of the officers' testimony alone.[19] See Campbell v. United States, 365 U.S. 85, 98–99, 81 S.Ct. 421, 5 L.Ed.2d 428 (1961).

So ordered.

18. Since the defendants did not move to sever the Wallace counts from the Dolinger count, it may be assumed that they agreed to joinder and its consequences. That is, they accepted the risk of prejudice on the Wallace counts from evidence admissible only on the Dolinger count. But it does not follow that they accepted the risk of prejudice from evidence admissible on no count. Nothing could more clearly contradict the Supreme Court's statement that illegal evidence is not to be used "at all." Silverthorne

WILBUR K. MILLER, Circuit Judge (dissenting).

In considering these appeals it should be remembered that count one—that which charged unauthorized use of the Dolinger automobile—accused the appellants of an offense unrelated to those of which they were accused in counts two and three, which charged unauthorized use and unlawful interstate transportation of the Wallace car. Consequently, the evidence introduced by the Government in support of the Dolinger count was quite different from that adduced by the Government under the Wallace counts; this is amply shown by the summaries of the evidence for the prosecution contained in the majority opinion. In no sense did the Government's evidence on the Dolinger theft depend upon, include, or duplicate its proof under the Wallace counts. The only similarity was that both offenses involved car thefts by the appellants which were committed very close together in point of time. It is noted that neither appellant suggested any potential prejudice from the joinder and made no motion that the Dolinger count and the Wallace counts be tried separately.

I am not particularly concerned with the majority's holding that there was error in the proceeding under count one, because it seems quite clear that the convictions under the second and third counts with respect to the unauthorized use and interstate transportation of the Wallace car should be upheld. That being true, error in the admission of evidence under the Dolinger count is immaterial, as each appellant received equal

Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920); Fahy v. Connecticut, 375 U.S. at 91, 84 S.Ct. 229, 11 L.Ed.2d 171.

19. At that time the defendants may also obtain review of the trial judge's decision that Hardy's and Donaldson's testimony was not fruit of the poisonous tree. We do not now decide whether, and to what extent, the Government might obtain review of a contrary determination. See D.C.CODE § 23–105 (1961).

and concurrent sentences on all counts. Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943). This court[1] said in Gibson v. United States, 80 U.S.App.D.C. 81, 84–85, 149 F.2d 381, 384–385 (1945), that "[W]here separate sentences are imposed to run concurrently the judgment will not be set aside, although error may [be] committed under one count."

Of course the majority do not contend otherwise. They say, however, that the *Hirabayashi* rule allows affirmance here "only if the jury's consideration of counts two and three was not prejudiced by error on count one." And they expressly concede that

"* * * [T]he extent, if any, to which the jury was influenced in its consideration of counts two and three would depend on the state of the evidence on those counts. Edwards v. United States, 265 F.2d 302 (9th Cir. 1959). *If the evidence on those counts were overwhelming, the error could be considered harmless as to them.* Farris v. United States, supra [24 F.2d 639 (9th Cir. 1928)]; see Commonwealth v. Dyer, 243 Mass. 472, 509–510, 138 N.E.2d 296, 314 (1922). * * *" (My emphasis.)

From this it is clear that the majority themselves say any error under the Dolinger count should be considered harmless as far as the Wallace counts are concerned if the evidence under the latter counts was overwhelming. So, in the view of the majority, the applicability of the *Hirabayashi* case and the affirmance of the convictions under counts two and three depended upon whether the evidence on those two counts was overwhelming. Having thus staked out the question, the majority state their conclusion with respect to it by saying:

"* * * But in this case the evidence on counts two and three was not overwhelming: it consisted of

a nighttime identification made from a distance of twenty-five feet, which was denied by the defendants, who gave a somewhat plausible explanation of their presence in the vicinity: that they were in the area for the purpose of picking up Smith's car, which had been left with a friend for repairs. Having passed the intersection where they should have turned, they made a U-turn, and drove up a hill. When they reached the top, Anderson's car ran out of gas. They walked to a nearby gas station, and were returning with a can of gasoline when they were identified and arrested. * * *"

Even the majority regard the story about appellants' reason for being in this secluded area as only "somewhat plausible." But, plausible or not, the story does not explain their possession of the Wallace automobile which had just been stolen in the District of Columbia. The majority agree, as they must under the *Bray* case,[2] that the jury properly inferred from their possession that they had transported it from the District to Maryland, but say the inference "was by no means the only one which could fairly have been drawn." But they do not suggest any other inference that could possibly have been drawn from the appellant's possession in Maryland of the car just stolen in the District of Columbia. There is nothing whatever in the evidence from which the jury could have inferred that their possession was innocent: I suggest it is sophistry to say that the inference drawn by the jury that appellants had taken the car into Maryland "was by no means the only one which could fairly have been drawn."

As I have shown, the majority admit that the convictions on the Wallace counts two and three should be affirmed if the evidence with respect thereto was overwhelming; they simply say it was not overwhelming. For the purpose of considering the question whether the evi-

1. Judges Groner, Edgerton and Arnold.

2. Bray v. United States, 113 U.S.App.D.C. 136, 306 F.2d 743 (1962) (Judges Edgerton, Bazelon and Bastian).

dence on counts two and three was overwhelming, I quote the statement of facts with respect to the theft of the Wallace car which appears in the majority opinion:

"*  *  *  Joanna Wallace testified that her maroon 1962 Chevrolet disappeared from its parking space in front of her house in the District of Columbia some time after 8:30 p. m., October 4, 1962. James Bailey testified that on the same evening he and Elmer Williams, attracted by a hammering sound near their homes on Sligo Mill Road, Prince Georges County, Maryland, investigated and saw a maroon 1962 Chevrolet parked with its hood lifted in a wooded area at the dead end of the road.[3] The dome light inside the car was lit and there was a light on underneath the hood. Standing twenty-five feet from the car, he saw two men whom he identified as appellants, one 'under the hood,' and the other inside the car. They fled when Williams shouted 'Halt, police.' Bailey and Williams pursued but were unable to catch the two men.

"Officer Brown of the Prince Georges Police testified that he responded to a call and observed the 1962 Chevrolet and a 1955 Buick parked about fifty yards away. About fifteen minutes after his arrival, Brown saw the appellants approaching the Buick carrying a gasoline can; Bailey and Williams told him these men were 'the ones they had chased from the '62 Chevrolet.' When Brown questioned the appellants, they denied any knowledge of the Chevrolet, stated they had run out of gasoline in the Buick, and proceeded to pour the gasoline they were carrying into the Buick. [He] then arrested the appellants.

"The 1962 Chevrolet was later identified as the car stolen from Joanna Wallace *  *  *."

3. A stolen car could be stripped there without much risk of interruption. (This

This is a brief résumé of the evidence under the Wallace counts which the majority say was not overwhelming because

"*  *  *  it consisted of a nighttime identification made from a distance of twenty-five feet, which was denied by the defendants  *  *  *."

There was not the slightest equivocation in the "nighttime" identification; one of the appellants was seen in the lighted interior of the Wallace car, and the other was seen "under the hood" with a light. As the darkness necessarily accentuated the lights which were shining on the appellants, the witnesses of course had no difficulty in recognizing them from the short distance of 25 feet.

Although the majority say the "nighttime" identification "was denied by the defendants," the fact is that it was not denied by them at all, except that Anderson said he was not near the Wallace car at the time of the identification and that he had not driven that particular car out to Maryland. Smith made no reference whatever to the Government's proof under the Wallace counts except to say that he did not on October 4, 1962, "take an automobile that belonged to Joanna Wallace." These unelaborated denials that they stole the Wallace automobile, which were the appellants' only references to that subject, can hardly be characterized as "somewhat plausible" testimony. Their affirmative testimony did not relate to the Wallace counts, but was a complicated story in which they attempted to refute the Government's testimony about the theft of the Dolinger car.

In contrast to the majority's opinion that the Government's proof on the Wallace counts "was not overwhelming," I suggest that District Judge Hart, the able and experienced judge who tried the case, had quite a different view. He evaluated the Government's evidence as "the most open and shut—the tightest case" he had ever seen, "assuming the jury believes the identification." At the

note is not a part of the quotation from the majority opinion.)

close of the Government's case, the following occurred at the bench:

"MR. BURTON [attorney for defendants]: If Your Honor please, at this time I would like to make a motion for judgment of acquittal as to both defendants on all counts of the indictment. In regard to the automobile that belonged to Joanna Wallace, certainly there has been no evidence here that would indicate that either of these defendants drove the automobile or at least took the automobile from her, in front of her premises, out to Maryland. There has been no identification, no prima facie evidence of interstate transportation.

"THE COURT: There is present the evidence that it was stolen in D. C. and shortly after it was stolen, these two people had it out in the woods in Maryland, getting ready to strip it, trying to strip it. There is plenty of evidence of that.

"MR. BURTON: The case, if Your Honor please, of course, requires a more strict proof. It requires some —not only recent possession—that is the presumption that the Government is going on in this case, but certainly as the evidence has been unfolded here, it is not sufficient prima facie for a case of UUV [unauthorized use of a vehicle] as to these two individuals and as to the interstate transportation.

"THE COURT: When a car is stolen in the District and very shortly thereafter the car is in a wooded area in the possession of two people, being stripped, I do not know how you would ever get better evidence of UUV and interstate transportation, because of being stolen in the District and found out in Maryland.

"As a matter of fact, it is the most open and shut—the tightest case, assuming the jury believes the identification, that I have ever seen in my life. I do not know how you make a better UUV case with interstate transportation unless you had some-

one standing on the state line watching as they passed by."

Later in the discussion the court said:

"THE COURT: I think the Government more than met the burden in this case. To my mind they have presented one of the most classic cases in this UUV interstate transportation that I have ever seen. I have been fascinated to listen to it."

With such convincing evidence presented by the prosecution on the Wallace counts alone, which was entirely unconnected with its proof under the Dolinger count, the jury found the appellants guilty of stealing the Wallace car and transporting it across a state line. Yet, the majority say, "[W]e cannot be certain that a jury considering the Wallace counts alone would not have had a reasonable doubt of defendants' guilt." I suggest we *can* be certain that a jury considering the Wallace counts alone would not have had a reasonable doubt of the defendants' guilt, because the jury which actually considered those counts separately, as the trial judge instructed it to do, had no such doubt.

If the majority's uncertainty as to what a jury would do with the Wallace counts alone is based on the fact that another and unrelated charge of car theft was tried at the same time, their position is wholly unwarranted because no point as to improper joinder was made in the trial court.

From what has been said, I conclude that the proper way to dispose of these cases is to affirm the convictions under counts two and three; this would make it unnecessary to consider the alleged error in the admission of evidence under the unrelated first count. The majority's statement that the Government's evidence under the Wallace counts was not overwhelming is, as I have indicated, glaringly wrong, and is not a proper basis for their action. Decisions like this, which I regard as giving undue comfort to convicted criminals, have come to be common place in this court.

For the reasons stated, I dissent.