**Earl M. LEVEN, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 4886.**

District of Columbia Court of Appeals.

Argued July 29, 1969.

Decided Jan. 15, 1970.

1. *See* Glover v. District of Columbia, D.C. App., 250 A.2d 556 (1969).

John Bodner, Jr. Washington D. C., for appellant.

Richard W. Perkins, Special Asst. to the United States Atty., of the bar of the State of Connecticut, pro hac vice, by special leave of the court, with whom Thomas A. Flannery, U. S. Atty., Roger E. Zuckerman and Sandor Frankel, Asst. U. S. Attys., were on the brief, for appellee. John A. Terry, Asst. U. S. Atty., also entered an appearance for appellee.

Before HOOD, Chief Judge, and FICKLING and KERN, Associate Judges.

FICKLING, Associate Judge:

This is an appeal from a conviction for carrying a pistol without a license in violation of D.C.Code 1967, § 22–3204. Appellant's main contention is that the trial court erred in denying his motion to suppress two pistols on the ground they were obtained as the result of an illegal search and seizure. Our view of the record convinces us that appellant is correct in his contention and we reverse.

On the evening of April 11, 1968, a curfew was in effect in the District of Columbia due to riots and civil disturbances. The most serious disturbances had occurred after dark and a curfew was imposed to keep people off the streets.[1]

At approximately 12:30 a. m. that night, appellant and one Landen, his employee, escorted another employee, Walters, through the police checkpoints and over Key Bridge to Virginia. For this purpose appellant utilized a blue Ford van owned by the Eastern Detective Academy.[2] The markings on the van gave it the appearance

2. Appellant described himself as "Superintendent of the Eastern Detective Academy" and "Commanding Officer of the Eastern Detective Agency."

of being a police vehicle—lettering on both sides of the van read "Police Identification Division," a sign "Police" appeared in the front window, tags with "Special Police, Washington, D.C." covered the front and rear license tags, and a red dome light was on the roof of the van.[3] A shotgun was plainly visible in the front window of the vehicle.[4]

Appellant was sitting in the passenger seat as Landen drove the van back across Key Bridge and onto M Street, N.W. As the van approached Wisconsin Avenue, Officer Rose overtook it in his patrol wagon and directed the driver to pull over to the curb. Officer Rose requested Landen to show his driver's permit and motor vehicle registration. Appellant interjected himself into the conversation, claiming he was a private detective with a commission to protect private property. Upon further questioning, appellant was evasive and was unable to produce any commission which would have given him the right to be on the street during the curfew. While Officer Rose was examining the shotgun, Officer Meleo arrived in his scout car. Officer Rose asked Officer Meleo to drive behind the van while he led the van to the Seventh Precinct Station in order to check the validity of appellant's claim. The caravan of three vehicles took about 5 minutes to cover the 6-block distance to the precinct station.

On the way to the station, Officer Meleo saw the appellant, through the rear window of the van, lean forward and apparently place something under his seat. As soon as the three vehicles reached the station, Officer Rose escorted the two men inside while Officer Meleo walked to the right side of the van, opened the door, reached under the front seat where the appellant had been sitting, and found two pistols.

Upon a thorough reading of Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968), and Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), we cannot agree with the Government that the search here did not violate appellant's fourth amendment rights.

Undeniably, *Preston* can be distinguished from this case on its facts. Nevertheless, the thrust of the broad language in that opinion cannot be ignored by this court. Here, as in *Preston*,

[i]t is argued that the search and seizure was justified as incidental to a lawful arrest. Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. This right to search and seize without a search warrant extends to things under the accused's immediate control, and, to an extent depending on the circumstances of the case, to the place where he is arrested. The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime— things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. *Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest.* Here, we may assume, as the Government urges, that * * * because the arrests were valid * * * the police had the right

---

3. The lettering "Eastern Detective Academy Identification Division" was permanently printed on the sides of the van. A sign reading "Police" covered the words "Eastern Detective Academy." Another sign with "Police" written on it was im-

posed over a canvas on the rear of the van covering the title "Eastern Detective Academy."

4. The firing pin had been filed down, rendering the shotgun inoperable.

to search the car when they first came on the scene. But this does not decide the question of the reasonableness of a search at a later time and at another place. [Citations omitted; emphasis supplied.] [5]

The courts in this jurisdiction have followed the language in *Preston* in ruling on the suppression of evidence seized in a search subsequent to an arrest. In Bowling v. United States, 122 U.S.App.D.C. 25, 350 F.2d 1002 (1965), the court reversed a conviction on the grounds that, *inter alia,* evidence seized in a search of an auto when the search was "renewed" some miles away from the scene of the arrest was not admissible as the fruit of a search incident to an arrest.

Chief Judge Bazelon points out in Smith v. United States, 118 U.S.App.D.C. 235, 335 F.2d 270 (1964), that

[e]ven before the recent case of Preston v. United States, 376 U.S. 364, 84 S.Ct. 881 (1964), it was clear that a warrantless search of a car in police custody at a time after the occupants' arrest and under circumstances where there is no danger of removal is illegal. Rent v. United States, 209 F.2d 893 (5th Cir. 1954).; Shurman v. United States, 219 F.2d 282 (5th Cir. 1955); Millette v. State, 167 Miss. 772, 148 So. 788 (1933). The Supreme Court's holding to the same effect in *Preston* puts the matter to rest.[6]

This court also recognized this principle prior to *Preston*. In Travers v. United States, D.C.Mun.App., 144 A.2d 889 (1958), this court reversed a criminal conviction for possession of a blackjack where the search of appellant's car took place away from the place of arrest and outside the police precinct, no more than 15 minutes after the arrest. This court concluded that although the search was "substantially contemporaneous" with the arrest it was "unreasonable" because

* * * after appellant had been safely delivered to the custody of the police station, there was no longer any necessity for the police to search the car in order to protect themselves, or to discover a means that might be used to effect an escape from custody. Consequently, the search must have been in the nature of an exploratory search which is forbidden.[7]

The arrest here apparently was for a curfew violation [8] and it was unnecessary to search for fruits of the crime. Moreover, with appellant in police custody inside the police precinct, the search certainly was not for the protection of the officer, nor was it to secure and preserve evidence of a curfew violation.[9] The issue whether *suspicious* behavior during the existence of a curfew justified a search by police without a warrant and prior to arrest is not presented since the search here was made at the precinct *subsequent* to the arrest.[10]

We hold that the search was not incident to the arrest, but that it was an invalid exploratory search. Travers v. United States, *supra.*

---

5. 376 U.S. at 367–368, 84 S.Ct. at 883.

6. 118 U.S.App.D.C. at 238, 335 F.2d at 273.

7. 144 A.2d at 891.

8. The testimony of the arresting officer and the officer who conducted the search quite clearly indicates that appellant was taken to the precinct to allow the officers to inquire further as to his justification for being on the street during curfew. The testimony of both officers indicates further that they intended, until the pistols were uncovered, to charge appellant with a curfew violation if his authority to be on the street was non-existent.

9. *See* Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472 (1968); Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).

10. We note, parenthetically, that the Government did not urge upon the trial court that the search was incidental to the arrest although that argument is now made to this court.

Reversed and remanded with instructions to grant a new trial.

HOOD, Chief Judge (dissenting):

I cannot agree that the pistols were seized through an invalid exploratory search. In determining the validity of the search, "the test still is, was the search unreasonable", Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964). The search was not unreasonable if the officers conducting the search had reasonable or probable cause to believe they would find the instrumentality of a crime or evidence pertaining to a crime before they began their warrantless search. Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 221, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968). For reasons hereafter stated I believe the search was reasonable.

The reasonableness of the search is not to be tested by abstract principles of law or by some ruling on another set of facts, but should be determined on the facts in this case. The facts facing the officers in this case were that the District of Columbia had suffered riots causing death or injury to many of its residents and property destruction running into millions of dollars. In an effort to restore order, the local authorities had imposed a nighttime curfew.[1] The curfew was still in effect when shortly after midnight appellant's van was stopped by Officer Rose. The appearance of the van was unusual. Although obviously not a regular police vehicle, it bore signs and tags indicating it was some kind of a special police car. Appellant claimed to have some authority or commission to be on the streets during the curfew but was unable to produce anything to substantiate his claim. It was certainly reasonable for Officer Rose to require the van to follow him to the nearby precinct where appellant's claimed credentials could be checked out, and as a precautionary measure to have Officer Meleo follow behind the van.

When Officer Meleo saw appellant apparently placing something under the seat he had before him these facts. Here was a man who pretended to be some kind of special police with authority to be on the streets during the curfew to protect property, prominently displaying a shotgun in the front of his vehicle, and apparently trying to conceal something under the seat before he reached the precinct. I think these circumstances gave Officer Meleo reasonable cause to believe that appellant was attempting to conceal a pistol or other weapon under the seat. Police officers are usually armed, and it was reasonable to believe that one who pretended to be an officer and openly displayed a shotgun, would be carrying arms other than the shotgun. The officer did not make an exploratory search of the van. He merely reached under the seat to see what this bogus policeman was trying to hide.

Under these circumstances I think it is most unreasonable and unrealistic to say that the officer, at a time when there was a great shortage of police man power, should have gone across the city seeking a judicial officer to issue a search warrant. It should be remembered that the van had not been impounded by the police. If appellant had been charged at the precinct with a curfew violation, presumably he could have been freed on posting collateral, and departed either with the van or with its contents which he wished to conceal, and this could well have happened before Officer Meleo returned with his search warrant, had he been able to secure one.[2]

Recently the Chief Judge of the United States Court of Appeals for the District of Columbia Circuit had occasion to speak of the "intricacies of criminal law and procedure" with which many lawyers are not familiar.[3] It puzzles me when a court holds

---

1. *See* Glover v. District of Columbia, D.C. App., 250 A.2d 556 (1969).

2. *See* Johnson v. State, 8 Md.App. 28, 257 A.2d 756 (1969).

3. Contee v. United States, 133 U.S.App. D.C. 261, 410 F.2d 249, 250 (1969).

that the average police officer, making an on the spot decision, must comply with all the intricacies of the criminal law of search and seizure. I believe the majority opinion departs from the test of the reasonableness of the search, and by a too rigid reading of *Preston* orders freed a man who was unquestionably guilty. I would affirm.