**UNITED STATES of America**

**v.**

**Samuel L. STRAITE, Appellant.**

**No. 23260.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 3, 1970.

Decided April 2, 1970.

Mr. William J. Garber, Washington, D. C., for appellant.

Mr. Herbert B. Hoffman, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before WRIGHT, McGOWAN and MacKINNON, Circuit Judges.

PER CURIAM:

Appellant was convicted in the District Court, sitting without a jury, on one count of assault with intent to kill, and two counts of assault with a dangerous weapon, 22 D.C.Code §§ 501, 502.[1] The charges arose from an incident wherein appellant threatened to kill a dog which allegedly was harassing his children. Words were exchanged between the dog's owner and appellant, appellant entered his home, returned with a gun, and fired four shots. Found guilty on all counts, appellant received a general sentence of five to fifteen years. He seeks a remand for resentencing on the ground that the use of the general sentence is improper.

Before reaching the question of sentencing, we deal with another assignment of error deriving from the circumstances of appellant's waiver of jury trial. At trial, the record reveals this colloquy following upon an off-the-record conference at the bench:

[Appellant's counsel]: Your Honor, I have conferred with Mr. Straite and have advised him he has a right to trial by the Court or Jury. I have advised him that in a trial by jury the jury will decide the case with instructions from the Court on the law; and that a trial by the Court means the Judge will decide the facts and the law and determine his guilt or innocence. He at this time, Your Honor, wishes to waive his right to a trial by jury. He understands that he is having his case tried by this Court. Is that right. Mr. Straite?

Defendant Straite: Yes.

The Court: Very well.

Mr. Nesbitt: Mr. Straite will sign the waiver now, Your Honor.

Your Honor, Mr. Straite has signed, I have signed and the Assistant U. S. Attorney has signed the waiver.

The Court: All right.

Appellant now asserts that this purported waiver was constitutionally defective in that the degree of participation by the trial judge in this inquiry was deficient.

We cannot say that, on the record before us, the waiver was demonstrably involuntary, despite the relatively passive nature of the role played by the trial court. Rule 23(a), Fed.R.Crim.P., says only that "[C]ases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government." *Compare* Rule 11, Fed.R.Crim.P., relating to the taking of guilty pleas. Nevertheless, there is much to be said, in terms of the kind of judicial administration which anticipates and nullifies potential sources of trouble on direct appeal or collateral attack, for the trial judge's assuming an active role in establishing that the waiver is voluntary and informed.[2] We commend to the attention of the District Court the recommendation by the American Bar Association Project on Minimum Standards for Criminal Justice (Trial by Jury, Part I, Section 1.2(b)) that the de-

1. Appellant urges that the evidence was insufficient to sustain the verdict with respect to the charge of assault with intent to kill. It is true that appellant's testimony as to the firing of the shots varies from that of the complaining witnesses, but our reading of the record persuades us that there was adequate evidence from which the court could have found the requisite elements.

2. In a recent tightening up of the procedures in General Sessions Court for the waiver of jury trial, Jackson v. United States (262 A.2d 106, decided February 17, 1970), the District of Columbia Court of Appeals noted that the Government in its brief had suggested the merits of a "requirement of some form of direct communication between the judge and defendant, in addition to the written waiver * * *." The court itself went on to say that "[A]n on-the-record inquiry of a defendant himself by the trial judge in open court would more readily facilitate the trial judge's determination, and the determination in any post-conviction proceedings, that the waiver was in fact voluntary. * * *"

fendant shall be "advised by the court of his right to trial by jury" as an essential element of the waiver procedure; and to its observations in this regard as follows (at p. 38):

> "It may well be that a defendant who has been informed by his counsel or is otherwise aware of his right to trial by jury may intelligently waive that right without further admonishment from the court. However, consistent with the approach which has been taken with regard to entry of a plea of guilty, the better practice is for the court to advise the defendant of his right to jury trial before accepting a waiver. * * * "

A general sentence introduces a variety of difficulties into the efficient administration of justice. When an appellate court reverses less than all of a multicount conviction, it usually must remand, either because the general sentence imposed is greater than the maximum permitted on the remaining counts,[3] or because of the possibility that the sentencing judge was influenced by the multiplicity of offenses. *See* Baber v. United States, 116 U.S.App.D.C. 358, 324 F.2d 390 (1963). Furthermore, the general sentence hampers the prison and correctional authorities in the accomplishment of their rehabilitative purposes, and confuses the defendant by disguising the essence of the court's decision on the individual offenses committed.[4]

 The Fifth Circuit, in the course of outlawing the general sentence for courts under its supervision, has rehearsed at length the weaknesses of the general sentence. They are well-known, and need not be repeated here. We agree with the Fifth Circuit's acceptance of

> "The basic idea that a criminal sentence should be plain, unequivocal and so free from doubt that those concerned—accused, sentencing Court, reviewing Court, and prison authorities —will know precisely what the punishment is. * * * A sentence is passed not because the defendant is a social outcast or needs chastisement generally. It is the law's punishment for specific transgressions.

Benson v. United States, 332 F.2d 288, 290, 291 (5th Cir. 1964); *See also* Walker v. United States, 342 F.2d 22, 27 (5th Cir.), cert. denied, 382 U.S. 859, 86 S.Ct. 117, 15 L.Ed.2d 97 (1965).

We adopt the view of the Fifth Circuit. Although we affirm the judgment of conviction on all counts, we note that the facts of this case present an especially appealing case for careful and precise sentencing. Consequently, we vacate the sentence imposed and remand for resentencing.[5]

It is so ordered.

---

3. In this instance the general sentence was five to fifteen years. This was the maximum permitted for assault with intent to kill, but exceeded the maximum limits in respect of the other two counts of the indictment.

4. *See* ABA Minimum Standards, Sentencing Alternative & Procedures, § 5.6 (iv), where it is provided that the sentencing judge "should state with care

the precise terms of the sentence which is imposed."

5. We note the Fifth Circuit's emphasis upon the fact that defects of the general sentence go only to the sentence, not to the underlying conviction; and that they cannot be reached in collateral proceedings under 28 U.S.C. § 2255. Benson v. United States, *supra* at 292 n. 10.