UNITED STATES of America

v.

Robert L. MACK, Appellant.

UNITED STATES of America

v.

Harold L. JOHNSON, Appellant.

Nos. 24950, 71-1659, 71-1057 and 71-1122.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 21, 1972.

Decided June 30, 1972.

Certiorari Denied Oct. 24, 1972.
See 93 S.Ct. 297.

Mr. Leonard I. Rosenberg, Washington, D.C. (appointed by this Court), with whom Mr. John B. Middleton, Washington, D.C., was on the brief, for appellant in Nos. 24950 and 71–1659.

Mr. Albert J. Ahern, Jr., Washington, D.C. (appointed by this Court), for appellant in Nos. 71–1057 and 71–1122.

Mr. Leonard W. Belter, Asst. U. S. Atty., with whom Messrs. Harold H. Titus, Jr., U. S. Atty.; John A. Terry and Robert A. Shuker, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, SIMON E. SOBELOFF,* Senior Circuit Judge for the Fourth Circuit, and LEVENTHAL, Circuit Judge.

SOBELOFF, Senior Circuit Judge.

The appeals of Robert L. Mack and Harold L. Johnson press upon us a host of alleged errors in their joint trial for: (1) first degree felony-murder, 22 D.C. Code § 2401; (2) first degree premeditated murder, 22 D.C.Code § 2401; (3) armed robbery, 22 D.C.Code §§ 2901, 3202; and (4) robbery, 22 D.C.Code § 2901. The jury returned guilty verdicts on the first three counts. No verdict was returned on the fourth count, the court having instructed the jury that if they found the defendant guilty of armed robbery, they need not consider the charge of simple robbery.

The Government's case hinged upon the testimony of four witnesses, each of whom had a different perspective of the course of events leading to the crimes charged. Witnesses Hubert Lawson and Fred Jones testified that, on August 2, 1969, they were visiting in the apartment of Fred ("Doc") Lewis when three men entered and offered to sell him some jewelry. At the time, Lewis was seated at a kitchen table on which there lay three to four hundred dollars in cash from an earlier card game. Lewis declined the jewelry offer and ordered the three out. When the intruders were reluctant to leave, Lewis brusquely demanded that they go, brandishing a kitchen knife to emphasize his demand. The three thereupon withdrew.

Moments later, Lawson left Lewis' apartment to go home. In the hallway outside, Lawson encountered the same three men and overheard them discussing "what was the matter with Doc." One of the trio, although Lawson could not be sure which, said to Lawson, "It looks like he [Doc] wants to be messy or something." Lawson replied, "Oh, I don't know. He's probably upset." At that, one of the group retorted, "Well, we'll upset him good, if, you know, he wants to be real messy." At this point, Lawson passed by them and left the building.

Soon after Lawson left the apartment, Jones, who had stayed behind, heard a man's voice shout, "Doc, you didn't have to talk like that. I didn't like the way you talked." Turning around, Jones saw appellant Mack shoot Lewis with what appeared to be a shotgun, then push him to the floor and begin beating him. During the shooting, the two men who had come in with appellant Mack seized some of the money from the kitchen table and ran out. Mack then went over to the table, took the remaining money, and ran out after them.

Lawson, who by now had reached the street, heard the shot. Turning back towards Lewis' apartment, Lawson, while still on the street, saw the same three men he had earlier observed now run down the stairs, through the door and up the street.

Lewis subsequently died in the hospital as a result of the gunshot wounds inflicted upon him.

On the day of the shooting, the police showed the eyewitness Jones a photographic spread containing eight pictures. From that display, Jones identified appellant Mack as Lewis' assailant. Jones reaffirmed that identification three months later at a police lineup and, once again, in court. However, Jones could not identify the second appellant, Johnson; and Lawson, the other individual present in Lewis' apartment, was unable

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

to identify any of the participants in the shooting and robbery.

Since neither Lawson nor Jones was able to identify appellant Johnson at the scene of the crime, the Government was obliged to introduce the testimony of two additional witnesses, Charles Scott and Jeffery Green, to link Johnson with the events culminating in the robbery-slaying. Scott and Green testified that, on the day of Lewis' murder, they had a conversation with Mack, Johnson and a third man outside a restaurant located a short distance from Lewis' apartment.[1] After their talk, appellants Mack and Johnson, along with the third man, walked off in the direction of Lewis' nearby apartment. Approximately five minutes later, both Scott and Green heard a shot and saw Mack, Johnson and the third man run out of the apartment building and flee down the street.

Both defendants relied principally upon alibi defenses. Johnson testified that he was working at a garage at the time of the shooting and produced his employer to verify his story. Mack testified that, at the relevant time, he was helping his cousin and her son move furniture. Mrs. Belle Barry, Mack's cousin, testified in support of Mack's claim.

### TRIAL ERRORS CLAIMED

1. *Sufficiency of the Evidence*

a. Although a number of errors were asserted, the point most strenuously pressed by appellant Johnson is that the aggregate of evidence admissible against him could not suffice to support his convictions. This contention necessarily embraces a number of other challenges Johnson makes to specific items of evidence. First, he insists that, since no witness was able to identify him directly as one of those inside the building when the crime took place, no evidence as to anything that occurred there is admissible against him.[2] Second, he maintains

that, even if his first contention is rejected, Lawson's testimony as to what was said in the hallway outside Lewis' apartment by one of the three men must be inadmissible as to him because Lawson could not identify him as the declarant.

In our opinion, the District Court properly overruled both of these evidentiary objections. The testimony of witnesses Scott and Green placed Johnson, in the company of Mack, the identified killer, and another, entering the apartment building where Lewis lived. Just after the shot was heard the same three men were seen by Scott, Green and Lawson fleeing the scene. Lawson, moreover, testified that the three men he saw running out of the building after the shot were the same three he had seen inside only moments earlier.

 We cannot say that a jury, possessed of this evidence, should be forbidden, as a matter of law, from drawing the entirely reasonable inference that the threesome going into the building shortly before the crime, and running out just after, was the same group that committed the robbery-murder. There is evidence enough to link Johnson with the events occurring inside the building so that testimony as to those events is admissible against him. It was solely for the jury to consider what effect the failure of either Jones or Lawson to identify Johnson as one of the men inside Lewis' apartment should have on the weight of the Government's case against Johnson.

As for the declaration in the hallway by an unidentified speaker, the Government likens this to a "verbal act" and argues that, as it was not offered to prove the truth of the substance of the declaration, it did not fall within the commonly accepted definition of hearsay. In this view, the declaration would be admissible without any necessity for identifying Johnson as its source or supplying other, specific identification of the declarant.

---

1. The third individual who participated in the crime has not been identified or apprehended.

2. This argument was not advanced by Mack, who was identified by an eyewitness as the assailant.

■ We agree. Lawson's testimony that one of the three men outside Lewis' apartment said they would "upset [Doc] good" was introduced not to prove that Doc was ultimately killed or to show who his killer was, but rather to illuminate the subject of the discussion in the hallway. See United States v. Arceneaux, 437 F.2d 924 (9 Cir.1971); United States v. Manfredonia, 414 F.2d 760 (2 Cir. 1969). Since the Government, under the second count of the indictment, was obliged to show premeditation before the killing, the declarations heard in the hallway were highly relevant on the issue of premeditation, regardless of their truth or falsity. Objections raised by appellant Johnson, based on the hearsay rule, do not, therefore, enter into the analysis and it is immaterial that Johnson could not be identified as the source of the declarations.[3] Braswell v. United States, 200 F.2d 597 (5 Cir. 1952).

■ Plainly there was evidence sufficient to support Johnson's convictions. Viewing the evidence from the various perspectives of the witnesses who testified, Johnson was firmly linked with Mack, the identified slayer, by showing their entering the apartment building together just before the shooting and running away together just after the shooting. That Johnson still accompanied Mack during the escapades inside the building is strongly indicated by the testimony of Lawson, who swore that the three men fleeing the building after the crime were the same three he had earlier encountered. In light of Scott's and Green's testimony, identifying Johnson as one of the men fleeing the building just after the shot was heard, the inference is certainly allowable that Johnson was one of the two men who aided and abetted in Lewis' murder and who directly participated in the armed robbery. Given the sum total of this evidence, circumstantial and otherwise, the jury could readily have concluded, as they did, that Johnson was guilty beyond a reasonable doubt.

■■ Our decision on this point also disposes of Johnson's assignment of error in the trial court's refusal to grant him a severance. The severance motion was premised on the assumption that a mass of damaging testimony as to all that occurred inside the building was admissible against Mack but not Johnson. As we reject that premise, the grounds for the severance motion necessarily must fall. Where two or more defendants may be convicted on the same set of facts or are charged with crimes arising from the same transaction, a joint trial is ordinarily appropriate. Dykes v. United States, 114 U.S.App.D.C. 189, 313 F.2d 580 (1962), cert. denied, 374 U.S. 837, 83 S.Ct. 1889, 10 L.Ed.2d 1059 (1963); United States v. Lebron, 222 F.2d 531 (2 Cir.), cert. denied, 350 U.S. 876, 76 S. Ct. 121, 100 L.Ed. 774 (1955). In this instance, it is plain that no prejudice accrued to Johnson from the joint trial with his codefendant Mack. See United States v. Wilson, 140 U.S.App.D.C. 220, 434 F.2d 494 (1970).[4]

---

3. See, in this connection, the analysis of Professor Wigmore:

 Whenever an utterance is offered to evidence the *state of mind* which ensued *in another person* in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the Hearsay rule is concerned. (Emphasis in original.) 6 J. Wigmore, *Evidence,* § 1789, p. 235 (3d ed. 1940).

4. There is no legal obstacle to either indicting, convicting, or imposing concurrent sentences upon appellants for the crimes of both felony-murder and premeditated murder, where those crimes arose from a single act. As this court has recently said, in the process of affirming concurrent sentences for rape and murder convictions:

 There was no anomaly in indicting appellant for both first degree premeditated murder and first degree felony-murder. The offenses are distinct in the sense that they have different elements. One requires that the slaying be done with "deliberate and premeditated malice," the other requires that the killing occur in the course of certain enumerated felonies. The same slaying could be both. . . . .

b. Both appellants contend that the Government's evidence of premeditation was fatally lacking and that it was error for the trial judge to deny Johnson's motion to reduce the first degree murder count to second degree murder as well as Mack's motion to dismiss the first degree murder count entirely. Appellants suggest that the evidence in the case was as probative of a killing committed in an uncontrollable rage as of one undertaken after coldblooded deliberation and planning. While denying that they were present at all, they point to the beating of Lewis after the shooting as evidence of the fury possessing the assailants and posit that, after being ushered out of the apartment with a knife, the three lingered in the hall not to plan a murder-robbery, but in the grip of a rising, uncontrollable rage which exploded in the killing of Lewis.

Whether appellant's alternative theory is sound or is too farfetched to merit serious consideration was here for the jury to decide.

 In light of the available evidence, the trial judge properly left for the jury's consideration the question of premeditation. While the evidence did show that the three assailants lingered in the hallway for only a short time before returning to the apartment, the law requires only that "some appreciable time" elapse during which the necessary premeditation could take place. Austin v. United States, 127 U.S.App.D.C. 180, 184–188, 382 F.2d 129, 133–137 (1967). Of course, the passage of time, standing alone, will not support an inference that deliberation took place, Parman v. United States, 130 U.S.App.D.C. 188, 399 F.2d 559, 568, cert. denied, 393 U.S. 858, 89 S. Ct. 109, 21 L.Ed.2d 126 (1968), but here we have more. Lawson's testimony concerning what was said outside Lewis'

apartment sheds light on the subject of the hallway parley and permits a jury finding that there was, indeed, preparation and planning for the murder.

 Finally, the significance of Lewis' being beaten after he was shot, as that fact bears on the appellants' state of mind at the time, was again most properly left for interpretation by the jury and not the court. *See* Parman v. United States, *supra*.

## 2. *Defendants' Alternative Theory of the Case.*

 Both appellants fault the trial court for its refusal to charge the jury specifically that, if the intent to rob Lewis was formed *after* the shooting, there could be no conviction on the felony-murder count, as the killing would not then have been committed "in the course of" the felony. *See* Coleman v. United States, 111 U.S.App.D.C. 210, 295 F.2d 555 (1961), cert. denied, 369 U.S. 813, 82 S.Ct. 689, 7 L.Ed.2d 613 (1962). If the evidence fairly raised this theory of the case, appellants were certainly entitled to have their theory included in the jury charge. Pierce v. United States, 414 F.2d 163 (5 Cir.), cert denied, 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969); Belton v. United States, 127 U.S.App.D.C. 201, 382 F.2d 150 (1967).

 However, even assuming that there was fair support in the evidence for appellants' theory, the charge given the jury adequately covered that approach. Under the instructions given, the jury was informed that, to return a guilty verdict on the felony-murder count, they had to find, beyond a reasonable doubt, that the killing took place "while [the defendant or an aider and abettor was] perpetrating or attempting to perpetrate the

---

* * * * *

Of course, a defendant committing a single homicide cannot be given consecutive sentences for both first degree murder and another crime of homicide. However, the fact that punishments may not be cumulative plainly *does not mean*

that multiple convictions are impermissible. (Footnotes omitted; emphasis added.)

Fuller v. United States, 132 U.S.App.D.C. 264, 407 F.2d 1199, 1223–1224 (1968) (en banc), cert. denied, 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969).

offense of robbery." [5] This instruction was high-lighted by the closing statement of Mack's trial counsel, made without interference, that the jury should acquit on the felony-murder count if they found that the robbery was an "afterthought." In the circumstances, we conclude that appellants were in no way disadvantaged by the trial court's refusal to give an instruction in the words requested.

### 3. Other Assignments of Error.

Appellants allege additional errors in the court's jury instructions, evidentiary rulings,[6] and in the court's failure to grant appellant Mack's motion for a new trial on the ground of newly-discovered evidence.[7] Although these additional points were not vigorously pressed at oral argument, we have nonetheless scrutinized them with care and find them without merit.

### 4. Appellant Johnson's Sentence.

Although the issue was not raised by appellant Johnson, the Government, on appeal, draws attention to a possible infirmity in Johnson's sentence. After the jury returned its guilty verdicts on the first three counts of the indictment, the court, on January 18, 1971, imposed upon Johnson a single, general sentence of life imprisonment. Johnson immediately noted an appeal. On January 26, however, the court, presumably prompted by this circuit's condemnation of general sentences,[8] vacated the earlier sentence *sua sponte* and imposed instead three concurrent sentences: life imprisonment on each of the two murder counts and 5 years on the armed robbery count. The question therefore arises whether the court's action of January 26th, taken while an appeal was pending, was permissible.[9]

---

5. Other portions of the charge further underscored this point:

> Any killing . . . is murder in the first degree *if committed in the perpetration or attempt to perpetrate* robbery while armed or robbery.
>
> \* \* \* \* \*
>
> If two or more persons, acting together, are perpetrating or attempting to perpetrate robbery . . . and one of them, *in the course of the felony* and *in furtherance of the common purpose to commit the felony*, kills a human being, both the person who committed the killing and the person who aided and abetted him in the felony are guilty of murder in the first degree, felony murder, which is charged in the first count of the indictment. (Emphasis added.)

6. Appellant Mack also complains that he was prejudiced by testimony concerning his pre-trial identification by Mr. Jones from a group of eight police photographs. Mack asserts that this testimony allowed the jury to speculate that he had been in trouble with the police previously because, it is argued, the photographs were shown to Jones before appellant's arrest and it is common knowledge that the police do not normally have photographs of those who have never before been in legal trouble.

This circuit has, within the past year, twice rejected such a contention as a ground for reversal, at least where, as here, the jury was given no indication that the photographs used by the police were "mug shots." United States v. Clemons, 144 U.S.App.D.C. 235, 445 F.2d 711 (1971); United States v. Hallman, 142 U.S.App.D.C. 93, 439 F.2d 603 (1971).

7. The newly discovered evidence consisted of an affidavit by one Ethel Tensely to the effect that, on the last day of the trial, she overheard two men, whom she "thought" were Jones and Lawson, express doubt as to whether the defendants were, in fact, guilty. The trial court held a hearing on appellant Mack's motion for a new trial. Jones and Lawson were called as witnesses and both denied making the statements attributed to them in Mrs. Tensley's affidavit. The trial court found Mrs. Tensley's statements not credible and denied the motion.

Under the circumstances, no abuse of discretion appears. United States v. Gaither, 142 U.S.App.D.C. 234, 440 F.2d 262 (1971).

8. United States v. Straite, 138 U.S.App. D.C. 163, 425 F.2d 594 (1970).

9. The issue does not exist as to appellant Mack since he was sentenced only once— to imprisonment for life on each of the first degree murder counts and 5–15 years on the armed robbery count.

**340**

As a general rule, a district court's authority to take further action in a case is severely limited by the noting of an appeal. *See* 9 J. Moore, Federal Practice, ¶ 203.11 at 734–40, and cases cited therein. Where, as here, a sentence of a type condemned by this circuit was belatedly corrected, an exception might be urged, especially in view of the language in F.R.Crim.P. 35: "The court may correct an illegal sentence *at any time* . . . ." (Emphasis added.)[10] On the other hand, the general desirability of an orderly appellate process weighs against allowing a district court, absent extraordinary circumstances, to modify the judgment under consideration once an appeal has been noted. *See* Womack v. United States, 129 U.S.App.D.C. 407, 395 F.2d 630 (1968).

While no court has yet passed upon the specific point at issue here, numerous cases have held that a trial court may not entertain the analogous motion to reduce sentence—a motion also available under Rule 35—during the pendency of an appeal. *E. g.*, Berman v. United States, 302 U.S. 211, 58 S.Ct. 164, 82 L.Ed. 204 (1937); United States v. Grabina, 309 F.2d 783, 785 (2 Cir.), cert. denied, 374 U.S. 836, 83 S.Ct. 1885, 10 L.Ed.2d 1057 (1962). It is true that, in terms, Rule 35 does not empower a trial court to reduce a sentence "at any time" as is the case with the court's power to correct an illegal sentence. However, the inclusion of the words "at any time" in the illegal sentence provision of Rule 35 has been understood to refer to the court's power to correct an illegal sentence *after the expiration of the term*[11] rather than to the district court's power to act while an appeal is pending.[12] This being so, we find a persuasive analogy in the cases dealing with motions to reduce sentence. While the issue is not free from doubt, we think the better view is that the District Court, once Johnson filed his notice of appeal, was without authority to vacate the general sentence previously imposed.

The conclusion that Johnson's general sentence still stands, taken in light of this circuit's condemnation of such general sentences in United States v. Straite, 138 U.S.App.D.C. 163, 425 F.2d 594 (1970), requires us to affirm appellant Johnson's conviction but vacate both his general sentence, imposed on January 18, 1971, and the replacement sentences, imposed on January 26, 1971, and remand his case to the District Court for resentencing.

No such infirmity appearing, however, in the appeals of appellant Mack, we affirm in totality as to him.

Vacated and remanded as to Nos. 71–1057 and 71–1122; affirmed as to Nos. 24,950 and 71–1659.

---

10. Where general sentences are condemned, they are held to be "illegal" within the meaning of Rule 35. Benson v. United States, 332 F.2d 288, 291 (5 Cir. 1964).

11. Heflin v. United States, 358 U.S. 415, 421, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959) (Stewart, J., concurring); United States v. Welty, 426 F.2d 615 (3 Cir. 1970); Duggins v. United States, 240 F.2d 479 (6 Cir. 1957).

12. *See* 8a J. Moore, Federal Practice, ¶ 35.02 [1] at 35–3 (1972).