UNITED STATES, Appellee,

v.

Theodore Douglas **DOOLEY**, Appellant.

No. 72–1409.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 17, 1972.

Decided Jan. 5, 1973.

———◆———

Chester A. Bruvold, Minneapolis, Minn., for appellant.

Elizabeth A. Egan, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before MATTHES, Chief Judge, ROSS, Circuit Judge, and VAN PELT, Senior District Judge.

ROSS, Circuit Judge.

Theodore Douglas Dooley was convicted, upon a plea of guilty, of failure to report for and submit to induction into the armed forces. After entering the guilty plea, but prior to sentencing, Dooley filed a motion to withdraw his plea of guilty, but that motion was denied by the trial court. After sentencing, Dooley filed his notice of appeal to this Court from the "judgment of guilty."[1] We affirm the judgment of conviction.

Dooley's contentions are basically these:

   1. Dooley was entitled to a classification as "sole surviving son" which was denied by the local board.

   2. Dooley was denied the right to consult with a government appeal agent as provided by Selective Service regulations.

   3. The failure of the local board to give a reason for the denial of sole surviving son classification invalidates the order to report for induction.

Before proceeding to a discussion of these issues, we set forth some of the relevant events that took place prior to indictment, and their dates:

August 27, 1969 Dooley is classified 1–A.

September 26, 1969 Dooley appeals 1–A classification on the basis of being a sole surviving son.

May 25, 1970 Notice to report for induction on June 22, 1970.

June 2, 1970 Notice to report on June 22, 1970 is cancelled pending appeal of request for sole surviving son classification.

---

1. Over one month later Dooley filed in district court a "Petition to Set Aside Judgment of Conviction." At that time this appeal had not yet been docketed in this Court. The trial court ruled on the petition, denying it, two days prior to this case being docketed in this Court.

We do not find it necessary to discuss whether or not the ruling of the district court relating to the post conviction petition is properly before this Court. All of the allegations made in that petition were also made in the presentence motion and have been considered and rejected by this Court. We note, however, that the filing of a timely and sufficient notice of appeal normally divests the district court of authority to proceed further with respect to such matters. 9 J. Moore, Federal Practice, ¶ 203.11 at 734–740 (1972). *See* also United States v. Mack, 466 F.2d 333, 340 (D.C.Cir. 1972) ; United States v. Burns, 446 F.2d 896, 897 (9th Cir. 1971) ; United States v. Mason, 440 F.2d 1293, 1299 (10th Cir.), cert. denied sub nom., Edwards v. United States, 404 U.S. 883, 92 S.Ct. 219, 30 L.Ed.2d 165 (1971). *Cf.* Sykes v. United States, 392 F.2d 735, 738 (8th Cir. 1968).

August 24, 1970 Dooley appears before local board to claim sole surviving son classification.

September 9, 1970 Local board requests advice of state headquarters concerning sole surviving son classification request.

September 10, 1970 State headquarters advises local board that Dooley does not meet criteria for sole surviving son classification.

October 2, 1970 Dooley is notified that 1–A classification stands.

October 30, 1970 Dooley requests appeal of denial of sole surviving son classification.

November 23, 1970 Appeal Board of State of Minnesota affirms 1–A classification by 5–0 vote.

November 27, 1970 Dooley is mailed notification that 1–A classification stands.

December 2, 1970 Notice to report for induction on December 17, 1970.

December 16, 1970 Dooley requests form 150 to apply for C.O. classification but still claims he is entitled to sole surviving son classification. Order to report for induction is postponed until further notice as a result of this request.

January 27, 1971 Local board determines, pursuant to advice from state headquarters dated January 6, 1971, that there was no change in status resulting from circumstances over which Dooley had no control and refuses to reopen classification.

January 28, 1971 New date for induction is mailed ordering Dooley to report on February 8, 1971.

February 8, 1971 Dooley fails to report for induction.

### Sole Surviving Son

Dooley contends that he should have been exempt from induction as a sole surviving son since he is the only son of a father who was rated by the Veterans Administration as 100 percent disabled because of a service connected disability. In support of this assertion he cites a "Veterans Administration regulation" which states as follows:

"CHAPTER 5, SOLE SURVIVING SON

1. ELIGIBILITY

a. In order to qualify as a sole surviving son under the provisions of the Military Selective Service Act of 1967 and the Department of Defense policy, it must be shown that the person concerned is the only son surviving his father or one or more brothers or sisters who, as a result of a hazard incident to service in the Armed Forces of the United States, has

(1) Been killed, or

(2) Died as a result of wounds, accident or disease.

b. In addition, under the Defense policy, qualification is also extended in those instances where the aforementioned family members are

(1) In a captured or missing in action status, or

(2) Are permanently 100 percent physically disabled (to include 100 percent mental disability) as determined by the Veterans Administration or one of the military services, *and* is hospitalized on a continuing basis and is not gainfully employed by virtue of such disability."

Dooley does not cite us to any recognized source for this regulation but merely attaches a photocopy of the alleged regulation. But more importantly this contention cannot be accorded any great weight in view of the clear words of the statute then in effect which are as follows:

(o) Except during the period of a war or a national emergency declared by the Congress after the date of the enactment of the 1964 amendment to this subsection [July 7, 1964], where the father or one or more sons or daughters of a family were *killed in action or died in line of duty* while serving in the Armed Forces of the

United States, *or subsequently died* as a result of injuries received or disease incurred during such service, the sole surviving son of such family shall not be inducted for service under the terms of this title [sections 451, 453, 454, 455, 456 and 458–471 of this Appendix] unless he volunteers for induction." 50 U.S.C. § 456(*o*) (App.) (1967), as amended, 50 U.S.C. § 456(*o*) (App.) (1971). (Emphasis supplied.)

It is obvious from reading this statute that one condition of claiming the sole surviving son exemption is the *death* of the father (or one or more sons or daughters) and the fact that Dooley's father was 100 percent disabled (but still living) is not sufficient to qualify him for the exemption, notwithstanding the questionable Veterans Administration regulation indicating otherwise.[2]

### Denial of Right to Consult With Government Appeal Agent

This issue raised by Dooley is simply that on December 16, 1970, almost two weeks after he received his notice to report for induction on December 17, 1970, he went to the local selective service office and requested form 150. At that point, he allegedly inquired "about seeing a government appeal agent", and he claims he was informed that

"government appeals agents and advisers were not present and that these persons were local board members and that none of them were present either."

Dooley claims by way of affidavit, that the above statement amounts to a denial of an important procedural right—the right to speak to a government appeals agent. *See e. g.,* United States v. Bagley, 436 F.2d 55, 58 (5th Cir. 1970); United States v. Wilson, 345 F.Supp. 894, 898 (S.D.N.Y.1972). However, on the face of the affidavit it is certainly not clear that the appellant was denied the services of an appeals agent. He was told, so he said, that, "government appeals agents and advisers were not present . . .". Clearly this statement might have meant that an appeals agent was not then in the office. Dooley's affidavit does not state that after learning that an appeals agent was not then present, he requested an appointment and also fails to state whether Dooley was or was not given additional information by the selective service representative with regard to securing a conference with an appeals agent. The rather ambiguous character of the affidavit is especially obvious in light of the fact that the local board on that same day, the day before he was scheduled for induction, promptly acted to postpone induction and to secure a proper review of his C.O. claim. There is no claim that another request was later made for the services of an appeals agent even though Dooley's reporting date was delayed until February 8, 1971.

To determine whether this should have caused the trial court to grant the motion to vacate the judgment and withdraw the plea of guilty, it is necessary to consider whether the government appeals agent could have helped Dooley on the very eve of his induction. If the government appeals agent could have aided him in a material way, then it would seem that he has been denied an important procedural right mandating the allowance of his presentence motion.

First, the appeals agent could not have affected the local board's decision not to reopen Dooley's classification with regard to the C.O. claim. The board was required by 32 C.F.R. 1625.2 to first determine whether there had been a change in the registrant's status resulting from circumstances over which he had no control. Clearly the filing of a post induction order C.O. claim, in which beliefs had matured after notice to report for induction has been mailed,

2. It is noted that subsequent to the time in question Congress considered and rejected an amendment to the statute which would have encompassed the appellant's claim. *See* Conference Rep. 92–433, 92d Cong., 1st Sess. (1971), 1971 U.S.Code Cong. & Ad.News, p. 1502.

is not a change in the registrant's status resulting from circumstances over which he had no control. *See* Ehlert v. United States, 402 U.S. 99, 108, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971); United States v. Whalen, 451 F.2d 755, 757 (8th Cir. 1971). In fact, in *Whalen* we held that "the local board was *without authority* to reopen the classification . . . to determine his claim for c.o. status inasmuch as his claim was first filed subsequent to his notice to report for induction." *Id.* (Emphasis supplied.)

Neither is Dooley in a position to claim that the relatively short period between the appeal board's decision relating to his sole surviving son claim and the mailing of the notice to report for induction foreclosed him from pressing his C.O. claim before the notice to report for induction had been mailed. Dooley knew on or about October 2, 1970, that his request for a sole surviving son exemption had been denied by the local board after referral to the State Selective Service Office for a legal opinion and that his right to a sole surviving son exemption was extremely questionable. This case does not present the situation where the registrant was led to believe that he could only submit one claim for exemption at a time. *See* United States v. Bagley, 436 F.2d 55, 57 (5th Cir. 1970). Dooley was aware that he could submit two or more claims for exemption which is borne out by the fact that his request for form 150 expressly reserves his claim for a sole surviving son exemption.

As a consequence there were no facts which the appeals agent could have presented to the local or appeal board which would have justified reopening of his classification with regard to his C.O. claim, especially in view of our holding in United States v. Whalen, *supra*.

Dooley also argues that an appeals agent would have told him that he could submit to induction and press his C.O. claim in the service. This information might well have been material, but during oral argument of this case Dooley's counsel was asked whether his client would submit to a new induction order, and contest his C.O. claim in the service if the government would agree to such an arrangement in lieu of the criminal conviction. His counsel has advised the Court that Dooley "could not under any circumstances take the oath of induction without doing violence to his basic beliefs . . . .". As a result, Dooley cannot now claim that had he been armed with the knowledge that he could test his C.O. claim in the armed forces he would not have refused to report for induction.

Dooley further argues that the appeals agent could have requested the local board to reopen the classification with regard to the sole surviving son claim, pursuant to 32 C.F.R. § 1604.71, or the appeals agent could have told Dooley that the State Director could have ordered the appeal board to reopen the classification with regard to the sole surviving son claim, pursuant to 32 C.F.R. § 1626.61, or that the appeals agent could have told him that the State Director could have appealed the sole surviving son claim to the President, pursuant to 32 C.F.R. § 1627.1. Assuming that all of these procedures were open to Dooley, and that either or both the appeals agent or the State Director would have exercised their discretion to act on his behalf (even though he had already appealed the denial of the sole surviving son classification and the appeal was denied), Dooley suffered no prejudice since his sole surviving son claim could not have been allowed as a matter of law.

*Failure of Local Board to Specify Reason For Denial of Classification*

■ Dooley claims that the failure of the Local Board to specify its reason for denying his claim for classification as a sole surviving son is a fatal procedural flaw under the rationale of United States v. Hanson, 460 F.2d 337, 342–343 (8th Cir. 1972). This claim must fail for two reasons: First, it was not raised in the court below, in either the

presentence motion or the post sentence petition, and absent plain error will not be considered by this Court on appeal. United States v. Thomas, 469 F.2d 145, 147 n. 6 (8th Cir. 1972); Alger v. Hayes, 452 F.2d 841, 845 (8th Cir. 1972); Petschl v. United States, 369 F.2d 769, 773 (8th Cir. 1966). Secondly, the rationale of *Hanson* is not applicable to the facts of this case. In *Hanson* we held that the failure of a local board to specify its reasons for denial of a conscientious objector classification was a fatal procedural error. That holding was based on the inability of this Court to determine whether the local board's decision was based on the permissible ground of insincerity or for the incorrect and impermissible reason that the facts stated on his form did not make a prima facie case for the classification. In this case there is no factual question and no doubt as to the reason Dooley was not given the classification. He did not qualify under the selective service statute heretofore cited because his father was not dead. This is a question of law which was properly decided by the local board and the rationale of *Hanson* simply does not apply in such a situation.

As the court stated in Smith v. United States, 359 F.2d 481, 483 (8th Cir. 1966):

> "Petitioner had no absolute right to withdraw a plea of guilty before sentencing. In such cases where the right has been denied, we will reverse only for abuse of the trial court's discretion and the burden is upon petitioner to establish his grounds for withdrawal of the pleading." *Accord,* Pitt v. United States, 378 F.2d 608, 611 (8th Cir. 1967).

We have carefully examined the transcript of the hearing held by Judge Neville on January 27, 1972, at which the plea of guilty was tendered. The provisions of Rule 11, Federal Rules of Criminal Procedure, were carefully and fully complied with. Judge Neville later accorded Dooley two hearings on his motions to withdraw his plea and carefully considered and decided each of those motions. Based on our examination of the entire record, we cannot say that there was any abuse of discretion in his denial of either of these motions, and we therefore affirm the judgment of conviction.