**Warwick Mason WYATT, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 78–6107.**

United States Court of Appeals, Fourth Circuit.

Argued Sept. 11, 1978.

Decided Jan. 2, 1979.

John C. Lowe, Charlottesville, Va. (Lowe & Gordon, Ltd., Charlottesville, Va., on brief), for appellant.

Raymond A. Jackson, Asst. U. S. Atty., Norfolk, Va. (William B. Cummings, U. S. Atty., Alexandria, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and PHILLIPS, Circuit Judges.

PHILLIPS, Circuit Judge.

Warwick Mason Wyatt appeals the denial and dismissal of his motion for post-conviction relief under 28 U.S.C. § 2255. Found guilty in a nonjury trial on two counts of a three-count indictment charging narcotics law violations,[1] Wyatt unsuccessfully appealed, *United States v. Wyatt*, 561 F.2d 1388 (4th Cir. 1977); then moved for post-conviction relief in the United States District Court for the Eastern District of Virginia. His motion alleged that his waiver of jury trial was constitutionally invalid; and that, alternatively, he was denied effective assistance of counsel. The district court denied and dismissed the motion, and this appeal followed. We affirm.

## I.

Both of Wyatt's rejected grounds for post-conviction relief as brought forward on appeal stem from the single circumstance that the district judge who presided at his bench trial had earlier presided at the jury trial of one John Dulinsky in which Dulinsky, prior to being found guilty, implicated Wyatt in the narcotics traffic for which both were separately charged. The gist of Wyatt's two-pronged attack on his conviction was that his original lack of knowledge of this critical fact when he formally waived jury trial about a week before his bench trial, compounded by the bench trial judge's failure to inform him of the fact prior to the trial, made his waiver one not intelligently given, thus unconstitutionally denying him due process and his right to jury trial; and that the failure of his trial counsel to learn of this fact or, if he knew of it, to apprise Wyatt of it prior to trial, unconstitutionally denied him the effective assistance of counsel.[2] To appreciate the significance of these contentions it is necessary to trace out in some detail the procedural development of the case.

On May 10, 1976, Wyatt, then represented by counsel who represented him subsequently in all the proceedings through trial, was arraigned before United States District Judge Richard B. Kellam. At this time Wyatt requested jury trial. However, on June 14, 1976, under circumstances that are not developed on the record beyond the documentation showing the occurrences, he executed a written waiver of jury trial. On the same date his counsel certified on the signed waiver form that he had discussed

---

1. Indicted under 21 U.S.C. § 841(a)(1) for aiding and abetting the distribution of cocaine, under 21 U.S.C. § 846 for conspiracy to distribute, and under 21 U.S.C. § 843(b) for using a public communication facility in facilitating distribution, he was found guilty on the two substantive counts, not guilty on the conspiracy count.

2. We thus consider that the post-conviction motion raised constitutional questions of fundamental fairness in the due process sense, of denial of jury trial, and of ineffective assistance of counsel, under the Fifth and Sixth Amendments. The defendant did not actually argue due process as a separate ground independently of the claimed denial of jury trial right through invalid waiver. We consider that our discussion of the fundamental fairness in holding the defendant to his advance jury trial waiver under the circumstances of this case adequately disposes of any independent claim of a denial of due process. We note in this regard a recent observation by Mr. Justice Powell that there is not implicated in the Double Jeopardy Clause any protectible interest in retaining a particular fact finder thought to be favorably disposed, so that "reassignment of [defendant's] case from one judge to another, even though he may have waived jury trial on the belief that the original judge viewed his case favorably" is not barred. *Crist v. Bretz*, 437 U.S. 28, 51, 98 S.Ct. 2156, 2169, 57 L.Ed.2d 24 (1978) (dissenting opinion). While there is of course no Double Jeopardy claim here, we think this perception that some practical risks attending the assignment of judges must be accepted in assessing constitutional claims of essential fairness is pertinent.

and advised Wyatt of his rights. On June 16, 1976, the United States Attorney endorsed on the waiver form the Government's consent and joinder in the waiver, and United States District Judge John A. MacKenzie endorsed on it the court's approval. *See* Fed.R.Crim.P. 23(a).

Wyatt was brought to trial in Norfolk on June 21, 1976, United States District Judge J. Calvitt Clarke, Jr. presiding. At the opening of the trial Judge Clarke stated in the presence of counsel and the defendant:

> "Gentlemen, this matter comes before the court on the defendant's plea of not guilty to the charge in the indictment, and the defendant has executed a waiver of trial by jury, which has been endorsed by his attorney, by the United States Attorney, and has been approved by this court. So we are ready to proceed with the trial."

This was the only reference throughout the trial to the fact that Wyatt had previously waived jury trial. No response to this statement was made by Wyatt or his counsel, and the trial proceeded. The first witness called by the Government was Dulinsky, Wyatt's alleged co-conspirator who had earlier been tried and convicted in the jury trial presided over by Judge Clarke. After a relatively brief examination-in-chief during which Dulinsky directly implicated Wyatt on the charges against him, Wyatt's trial counsel began his cross-examination. Almost at its outset, Judge Clarke made comments in colloquy with counsel indicating that he had presided at Dulinsky's trial. Thereafter he made several references during the trial that indicated his participation in that earlier trial. None of these elicited any comment, suggestion, or motion from either Wyatt or his counsel, and the trial proceeded to verdict. Prior to pronouncing judgment, Judge Clarke specifically asked Wyatt if he cared to address the court, or knew of any reason why the court should not pronounce judgment. Wyatt declined

both invitations. No post verdict motions raising either of the contentions now in issue were made.

With new counsel, Wyatt appealed his conviction, raising no question about his jury trial waiver or the ineffectiveness of counsel. His appeal unsuccessful, on December 14, 1977 he filed his motion for post-conviction relief in which he raised these contentions for the first time. The Government filed a response and Judge Clarke then considered the motion on the basis of its contents, a supporting memorandum of law, the Government's response, and the trial transcript, holding no evidentiary hearing. He denied the relief sought in an order filed January 24, 1978. It is clear from his order and memorandum that Judge Clarke accepted for purposes of the proceeding the truth of all the material historical facts alleged in Wyatt's motion, and ruled as a matter of law that they did not establish a right to relief on either of the grounds advanced. This was an appropriate procedure. *See United States v. Baysden*, 326 F.2d 629, 632 (4th Cir. 1964). Among the facts clearly accepted by Judge Clarke for purposes of his ruling—though each was challenged by the Government in its response—were the two most salient ones undergirding Wyatt's contentions: that if Wyatt's trial counsel knew of Judge Clarke's role in Dulinsky's trial he did not divulge this to Wyatt prior to Wyatt's trial; and that Wyatt did not know of this from any other source at the time his trial commenced.[3]

In review, making the same assumptions, we agree with Judge Clarke that on the undisputed and assumed facts before him the defendant has failed to carry the burden that was his, *Johnson v. Zerbst*, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Aiken v. United States*, 296 F.2d 604 (4th Cir. 1961), to establish the constitutional errors asserted. We take the two assertions of constitutional error in order.

**3.** That the first of these was assumed is implicit in the district court's memorandum opinion which plainly indicates a perception that the defendant's lack of knowledge would impose no duty of interrogation upon the court. That

the second was assumed was made explicit in a statement in the court's memorandum: "Whether his attorney specifically told defendant of the trial judge's prior trial of a Government's witness is therefore immaterial."

## II. WAIVER OF JURY TRIAL

Wyatt contends that his waiver of jury trial, though given in literal compliance with the requirements of Rule 23(a) of the Federal Rules of Criminal Procedure, was not, within the constitutional requirements of *Patton v. United States*, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930), intelligently given. His challenge is narrowly focused and seemingly comes to this. When he executed the waiver form approximately one week before his trial he did not know that the judge who would try him would be the judge who had earlier presided at the jury trial of his alleged co-conspirator and had in that trial heard evidence that implicated Wyatt in the matter for which he stood indicted. His lack of knowledge persisted on this critical point until the cross-examination of the first government witness at his trial, when the trial judge revealed the fact. Not until he gained knowledge of this fact could he have made an intelligent waiver of jury trial, and his earlier waiver should retroactively be found not intelligently given. Since after learning the critical fact he did not again waive jury trial in accordance with Rule 23(a), he has been deprived of the jury trial to which he was constitutionally entitled, and his conviction must therefore be vacated.[4]

The precise judicial error upon which this contention is focused is the failure of the judge presiding at the bench trial to conduct on his own motion a formal interrogation designed to reopen the question of waiver in light of the allegedly critical facts known to that judge but not to Wyatt. It is important to note that no contention is made, nor would the record support one, that any judicial error tainted the giving of the June 14, 1976 written waiver or its formal approval on June 16, 1976 by Judge MacKenzie. To accept Wyatt's theory then would require a very special reading of the effect of all Rule 23(a) jury waivers given, as they frequently are, in advance of the trial date. In effect, it would require that they be reconfirmed by interrogation undertaken *sua sponte* by the judge presiding at trial to ensure that the waiver earlier given and not sought to be withdrawn remained voluntarily and intelligently given in the face of any personal predilections or special knowledge of the trial judge that might conceivably have influenced the waiver decision had these been known to the defendant at waiver time. We cannot so read the Rule nor the underlying constitutional concerns it is designed to safeguard.

Rule 23(a) speaks only to approval by the judge considering the formal proffer of the written waiver, and does not in terms require any interrogation by him as a condition to giving effective approval. *United States v. Hunt*, 413 F.2d 983 (4th Cir. 1969). The wisdom of some questioning by that judge to ensure that proffered waivers will in fact be voluntarily and intelligently given has been urged by some courts, including this one. *See id.* at 984; *United States v. Straite*, 138 U.S.App.D.C. 163, 425 F.2d 594 (1970). At least one court has found formal district court approval of a waiver ineffectual to bind the defendant when extenuating circumstances indicated that a more searching interrogation than that employed by the district judge was required to ensure intelligent consent. *United States v. David*, 167 U.S.App.D.C. 117, 511 F.2d 355 (1975). It is to these decisions that Wyatt points in contending that in this case too the circumstances of the bench trial judge's knowledge and Wyatt's ignorance of a fact critical to his intelligent waiver

---

4. This reconstructs and elaborates to some extent the actual contentions advanced in Wyatt's post-conviction motion and in his brief on appeal. While the motion took passing note of the earlier written waiver (though not of Judge MacKenzie's formal approval), it attempted to focus on the opening proceedings before Judge Clarke at trial as those wherein any effective waiver must be found to have been given and accepted by the court. (App.

305, 306). This conveniently ignored the plain fact that at that point Judge Clarke confronted a written waiver already given and judicially approved in compliance with the controlling rule, a point developed as the critical one in this opinion. We have reconstructed defendant's theory to make explicit an added argument of retroactive invalidity because it could be considered implicit in the contention actually advanced in the district court and on appeal.

mandated an interrogation that would have revealed it and permitted as of right a withdrawal of the earlier waiver.

 While we have no quarrel with these cases, and indeed take this occasion to repeat the advice given in *Hunt*,[5] they simply are inapposite here. They speak to the wisdom, and in some instances duty, of interrogation by the district judge giving formal approval to the written waiver when it is originally proffered by the defendant as required by Rule 23(a). They do not, and could not, be held to impose a comparable continuing duty on all district judges thereafter acquiring authority in the case.[6] In the post-waiver setting the judge confronts not an original proffer of waiver previously unexamined, but one already given and formally approved by a judge of co-equal authority. That prior approval is entitled to the general presumption of regularity that must attend all judicial acts, whether in the form of interlocutory orders or final judgments, until they are overturned by direct or collateral attack. *See Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). This is a presumption not easily overcome even in the face of a direct challenge or request to withdraw the waiver, for in such cases the decision to permit

withdrawal is committed to the discretion of the district judge to whom the request is made. *See McCranie v. United States*, 333 F.2d 307 (5th Cir. 1964); *Riadon v. United States*, 274 F.2d 304 (6th Cir. 1960). When, as here, no direct challenge to the prior approval nor request to withdraw the waiver is made, so that no duty to exercise discretion has been imposed on the judge by party action, any judge acting after the waiver must be entitled to presume its continued regularity.[7] He is thus under no duty to reconfirm the validity of the waiver save possibly under circumstances actually known to him that make reconfirmation clearly necessary to correct or prevent manifest injustice. Except to point out that such necessarily rare and extraordinary circumstances could theoretically relate to the original waiver and its approval or to events occurring afterwards, we need not now attempt further to define them. When as here, however, the circumstances are asserted to relate only to predilections or special knowledge of the bench trial judge, we think and here hold that if they are not sufficiently grave to require disqualification of the judge under 28 U.S.C. § 455 they could not qualify as circumstances requiring the judge's *sua sponte* reconfirmation of an earlier waiver.[8]

---

5. In doing so we note that interrogations by district judges approving waivers given in advance of trial might well develop exactly the point whose critical importance is revealed in this case: that among the risks being assumed by advance waiver are any related to the identity of the then unknown bench trial judge. For a form of advance waiver suggestive of this, see Annot., *Validity and Construction of Federal Criminal Rule 23*, 13 L.Ed.2d 1119, 1123 (1965). As pointed out in *Hunt*, interrogation both helps to ensure intelligent waiver and protects against groundless attacks.

6. Or, on the same judge who gave formal approval if assigned to conduct the bench trial.

7. We need not here consider the duration of this presumption in the absence of a direct challenge to a waiver's validity. Clearly it must persist at least until mistrial or reversal of conviction requires retrial. *See United States v. Lee*, 539 F.2d 606 (6th Cir. 1976) (withdrawal allowable of right after reversal of conviction); *United States v. Lutz*, 420 F.2d 414 (3d Cir. 1970) (dictum: withdrawal allowable of right after mistrial). Whether it survives these is not before

this Court in this case, and we express no opinion on the point.

8. We draw on the criteria for disqualification expressed in this statute not merely because of its convenience in supplying a ready text. The statute expresses a deliberate congressional judgment of the limits to which the normal presumption of judicial freedom from partiality, bias, prejudice, and self-interest can be indulged. As such it provides a reasonable bench mark for our closely related purposes.

Whether statutorily disqualifying circumstances actually known to the judge would necessarily always impose upon him a duty of *sua sponte* reconfirmation we need not now decide. Neither need we address the question whether the defendant might forfeit any right collaterally to challenge a failure to interrogate by failing on his part to raise the point on trial or appeal. *See Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973). Finally, we note that the most appropriate remedy for disqualifying circumstances known to the judge might not in any event be withdrawal of the jury trial waiver but merely continuance for

■ Both this general rule of presumed regularity of the advance jury waiver and its special application to circumstances personal to the bench trial judge are amply supported in related constitutional doctrine and by reason and practical necessity.[9] So far as the general presumption is concerned, a comparable presumption, though not typically so described, exists in the closely related area of guilty pleas and their subsequent withdrawals.[10] There, after a guilty plea has been entered in accordance with Fed.R.Crim.P. 11, it may only be withdrawn in the discretion of the district court, *see United States v. Tabory*, 462 F.2d 352, 354 (4th Cir. 1972), and after the imposition of sentence, "only to correct manifest injustice." Fed.R.Crim.P. 32(d). To employ a similar presumption in respect of jury waivers, where the defendant's interests surely cannot be thought to be more significant, seems clearly justified.

Special application of this presumption to circumstances related to the bench trial judge's predilections or special knowledge is a demonstrably rational one. It is reasonable for the bench trial judge to assume that the intelligence that informed a written waiver earlier given and judicially approved took into account and accepted the normal and inevitable exigencies attending the identity of the precise judge yet to be assigned to the bench trial. Indeed common experience and knowledge might well entitle a bench trial judge to assume that the waiver was given for over-riding tactical reasons even in the face of actual knowledge by the defendant at waiver time of any possible bench trial judge's special knowledge or predilections.[11]

Finally, practical necessity compels the presumption and its special application to the circumstances of this case. In its absence, defendants would be presented a practically irresistible temptation to hold back on a whole host of possible objections related to the special knowledge and proclivities of the particular bench trial judge ultimately assigned to the case: e. g., that he did not accept plea bargains; that he was notoriously severe in sentencing; that he was notoriously unsympathetic to defendants with prior convictions; etc. Were these to be subjected after conviction to collateral review on the sole question whether knowledge of the fact at waiver time would have prevented its giving, no waiver given without knowledge of the bench trial judge's identity could be acted upon with confidence.

■ Applying these principles to this case we hold that neither Wyatt's constitutional right to jury trial nor his right to fundamental fairness guaranteed by the due process clause was violated by the trial judge's failure on his own motion to advise Wyatt that the judge had presided at the earlier trial. It is not a cause for disqualification under 28 U.S.C. § 455 that a judge has acquired in his judicial capacity special knowledge of facts relevant to a case before him. *United States v. Mathis*, 550 F.2d 180 (4th Cir. 1976). This being so, under the rule here stated, no obligation fell upon Judge Clarke to reopen the question of jury

---

reassignment of a different judge to conduct a nonjury trial.

**9.** Rather surprisingly, the exact problem here considered seems not frequently to have been presented to federal courts. The Government cited one case, *United States v. Sansone*, 319 F.2d 586 (2d Cir. 1963) (per curiam), in which the Second Circuit held, without elaboration, that a bench trial judge did not abuse his discretion in approving a waiver of jury trial by a defendant whom he had previously tried. That of course is not precisely this case where the bench trial judge is not the one to whom the waiver is formally proffered, but it clearly supports our holding.

**10.** That the procedures for guilty pleas and jury waivers should probably be brought into general conformity has been noted by courts, e. g. *United States v. Straite*, 138 U.S.App.D.C. 163, 164, 425 F.2d 594, 595 (1970), and commentators, e. g., 8A *Moore's Federal Practice*, ¶ 23.03 [2] (2d ed. 1978).

**11.** There are of course many professionally sound reasons for choosing bench trial over jury trial. *See* H. Kalven & H. Zeisel, *The American Jury* 26–27 (1966); 8A *Moore's Federal Practice* ¶ 23.03[1] (2d ed. 1978). Particularly germane to this particular case is the conventional wisdom that juries are less sympathetic than judges in narcotics cases. *Id.*

waiver; rather, he was entitled to presume its continued regularity. Accordingly, the defendant has not established constitutional error in respect of his waiver of jury trial.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

■ Wyatt's claim of ineffective assistance of counsel, advanced with some diffidence on this appeal,[12] relates to the alleged failure of his trial counsel to have learned of the bench trial judge's participation in the earlier trial or to have informed Wyatt if counsel did know of it. We agree with the district court that the record does not support this claim, accepting the facts to be as Wyatt asserts.

■ Our test of effective assistance is now as stated in *Marzullo v. Maryland*, 561 F.2d 540, 543 (4th Cir. 1977): "Was the defense counsel's representation within the range of competence demanded of attorneys in criminal cases?" Within this test, effective assistance does not mean errorless representation. Rather, to show ineffective assistance, a convicted defendant "generally must establish that his counsel's error was so flagrant that a court can conclude that it resulted from neglect or ignorance rather than from informed, professional deliberation." *Id.* at 544; *Springer v. Collins*, 586 F.2d 329 (4th Cir. 1978). We cannot conclude that trial counsel's failure to learn, or to inform his client, of the particular fact here involved would constitute flagrant error resulting from neglect or ignorance. First, the trial record compels a general assessment of vigorous attentiveness to the obligations of advocacy throughout trial counsel's representation. There is no suggestion in it of perfunctoriness or lack of general preparation in respect of the facts and the law relevant to the case. *Cf. Wood*

*v. Zahradnick*, 578 F.2d 980 (4th Cir. 1978). With respect to the particular matter asserted to show dereliction, the record shows to the contrary a considered judgment by counsel in choosing a bench rather than jury trial. Jury trial was originally demanded at arraignment, but was deliberately waived thereafter upon counsel's recorded advice. This reveals counsel actively involved in making a considered tactical decision on a critical matter rather than one neglectful or ignorant of the importance that a deliberate choice be made. That the decision may in the event have involved tactical error—a matter in any event impossible to say—is of no moment to our inquiry. For reasons earlier explored in this opinion, we could not say that counsel's judgment to opt for bench trial even if he had actual knowledge of Judge Clarke's involvement in the Dulinsky trial would have been unsound professionally. This being so, we could not conclude that his failure to test and submit to possible veto his professional judgment on the point by specifically pointing up this fact to his client would amount to the kind of flagrant dereliction based upon ignorance or neglect we must find to give the relief sought. That in retrospect the prudence of having done so may now appear is, again, not to the point of our inquiry. We conclude that within the *Marzullo* test, ineffective assistance of counsel was not established.

*AFFIRMED.*

---

12. In his brief on appeal, it is stated, p. 19, that "counsel for Wyatt has raised here the issue of ineffective representation of counsel even though he does not believe the record supports such a claim." Later it is stated, p. 20, that he "nevertheless . . . preserves the point." It is clear in total context of the brief that appellate counsel considered himself forced to these positions because no evidentiary hearing was held below to develop the fact of trial counsel's failure to learn or inform Wyatt of the critical fact. As pointed out in the body of our opinion, we have assumed that fact for purposes of this appeal, as did Judge Clarke on the post-conviction hearing, and have therefore considered the contention as one seriously advanced on a record adequate for its disposition.